In re JET FLORIDA SYSTEMS, INC., and Airport Systems, Inc., Debtors.

OFFICIAL LABOR CREDITORS COMMITTEE, Appellant/Cross–Appellee,

v.

JET FLORIDA SYSTEMS, INC., and Airport Systems, Inc., Appellees/Cross-Appellants.

No. 87–0570–Civ.

United States District Court, S.D. Florida.

Dec. 7, 1987.

Claude D. Montgomery, Booth, Marcus & Pierce, New York City, for appellant/cross-appellee.

**546**

William H. Berger (as amicus), Office of the Solicitor, U.S. Dept. of Labor, Atlanta, Ga., for plaintiff.

Jerry M. Markowitz, Markowitz, Davis and Ringel, Miami, Fla., for appellees/cross-appellants.

## CORRECTED
## MEMORANDUM OPINION

NESBITT, District Judge.

This case is before the Court on cross-appeals from an order entered by the Bankruptcy Court on December 1, 1986. This Court has jurisdiction pursuant to Bankruptcy Rule 8001(a).

The issues involved in this appeal are but part of the protracted litigation surrounding the Air Florida bankruptcy. Those issues are: (1) whether the accrued medical expenses of the former employees of Air Florida deserve priority status under 11 U.S.C. § 507(a)(4); (2) whether some of the former employees are entitled to receive furlough pay as a priority under 11 U.S.C. § 507(a)(3); and (3) whether per diem advances to certain employees should be offset against priority or unsecured claims. The Secretary of Labor of the United States has filed a brief as *amicus curiae* on behalf of the Official Labor Creditors Committee ("Committee") on the issue of medical expenses.

### Medical Expenses

Air Florida Systems, Inc. and Air Florida, Inc. (now Debtors Jet Florida Systems, Inc. and Airport Systems, Inc., collectively referred to as "Jet Florida") filed reorganization petitions in July 1984. Among the companies' creditors were their employees, who were represented by several unions or bargaining groups. Those groups collectively form the Committee.

Until October 1, 1982, the companies provided health insurance for their employees through a policy underwritten by John Hancock Mutual Life Insurance Company ("John Hancock"). After that date, the companies became self-insured for several reasons such as cost and tax savings, but retained John Hancock as administrator of the plan. Under a self-insurance program, employees pay their medical bills and are reimbursed by the employer for covered expenses.

Although different collective bargaining agreements contained different insurance clauses, the parties and the bankruptcy judge treated all of the provisions as the same. As Jet Florida points out, however, at least half of the collective bargaining agreements provided that Air Florida would continue to provide medical benefits "to the best of its ability" and would reimburse employees "to the extent they were able." At the time the petition was filed, many claims for reimbursement were outstanding, totalling somewhere between $200,000 and $400,000. The Committee sought to have these claims for medical expenses classified as fourth-priority claims under § 507(a)(4).

■ In the December 1, 1986 order, the Bankruptcy Court found

as a factual matter that the loose arrangement by which Air Florida irregularly reimbursed individual employees for medical expenses did not constitute an "employee benefit plan" within the meaning of 11 U.S.C. § 507(a)(4), nor did reimbursements directly to employees constitute "contributions" to a plan, a requirement for eligibility for priority treatment under 11 U.S.C. § 507(a)(4).

*In re Jet Florida Systems Inc.*, No. 84–01223 (Bankr.S.D.Fla. Dec. 1, 1986) (Order on Motion for Classification of Claims). On appeal, both the Committee and the Secretary of Labor as *amicus curiae* argue that the Bankruptcy Court failed to utilize the appropriate definition of "employee benefit plan" and therefore erred as a matter of law in classifying the claims as unsecured. Because the definition of "employee benefit plan" under the Bankruptcy Code is a question of law, the issue is subject to *de novo* review in this Court despite the Bankruptcy Court's determination that it was "a factual matter." *See In re Osborne*, 42 B.R. 988, 995 (W.D.Wisc.1984) (conclusions of law mislabeled as findings of fact subject to plenary review on appeal). *See also In re Bodin Apparel, Inc.*, 56 B.R. 728

(S.D.N.Y.1985); *In re Crouthamel Potato Chip Co.*, 52 B.R. 960 (E.D.Pa.1985).

▮ Under the priorities provision of the Bankruptcy Code, "unsecured claims for contributions to an employee benefit plan" enjoy fourth-priority status. 11 U.S.C. § 507(a)(4) (1982 & Supp. II 1984). The Bankruptcy Code does not, however, contain a definition of "employee benefit plan." The Committee and the Secretary of Labor urge that Congress intended the same meaning as in the Employee Retirement Income Security Act of 1974 ("ERISA"). The ERISA definition includes

> any plan, fund, or program ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical, or hospital care or benefits....

29 U.S.C. § 1002(2) & (3). If the ERISA definition did apply to the term "employee benefit plan" as used in the Bankruptcy Code, determination of whether the Air Florida self-insurance plan met that definition would be a straightforward task. The United States Court of Appeals for the Eleventh Circuit has established guidelines for determining whether an employee benefit plan exists for ERISA purposes. In *Donovan v. Dillingham*, 688 F.2d 1367 (11th Cir.1982), the court found that "a 'plan, fund, or program' under ERISA is established if from the surrounding circumstances a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and procedures for receiving benefits." *Id.* at 1373.

The Committee and the Secretary of Labor advance compelling policy reasons for finding that Congress intended the ERISA definition to apply to section 507 of the Bankruptcy Code. Congress enacted § 507(a)(4) in response to two United States Supreme Court decisions that had excluded fringe benefits from the wage-priority provisions of the Bankruptcy Code. By providing explicit legislative authority for affording priority protection to insurance contributions and other fringe benefits, Congress recognized that employees often forego increased wages for those fringe benefits during the collective bargaining process. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. But even though Congress clearly intended to protect contributions to employee benefit plans, the Bankruptcy Code of 1978 does not include a definition of "employee benefit plan."

As noted, the policy reasons advanced by the Committee and the Secretary of Labor are compelling, but are not persuasive legal authority. The parties cannot cite any conclusive legislative history that indicates whether Congress did or did not intend the ERISA definition to apply to the Bankruptcy Code. The only evidence showing that Congress was aware of the ERISA definition is testimony of a witness at a House subcommittee hearing in 1976, urging adoption of the ERISA definition. *See In re Saco Local Dev. Corp.*, 23 B.R. 644, 646 (Bankr.D.Maine 1982) (citing *Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 Before the Subcommittee on Civil and Constitutional Rights of the House Comm. on the Judiciary*, 94th Cong., 2d Sess. 2424–2425 (1976)). The Committee also offers as evidence the fact that the 93rd Congress was the first to consider the Report of the Commission on the Bankruptcy Laws, which eventually led to the adoption of the 1978 Bankruptcy Code, and was also the Congress that enacted ERISA in 1974. *See* Reply Brief for Appellant at 6. Such inferences and assumptions as to the intentions of the 95th Congress in formulating § 507(a)(4) do not compel this Court to conclude that the ERISA definition of "employee benefit plan" applies to the Bankruptcy Code as a matter of law. Such a conclusion is one to be drawn expressly by the legislature, not inferred by the district court.

The Court does find, however, that the Bankruptcy Court erred as a matter of law in holding that Air Florida's self-insurance program was not an employee benefit plan under § 507(a)(4). In its Order, the Bankruptcy Court stated:

The cases allowing priority claims under 11 U.S.C. § 507(a)(4) involve both a clearly established plan, such as a group health insurance policy underwritten and operated by a recognized third-party insurer or a union-organized health and welfare fund, together with a definite contribution, such as an unpaid insurance premium for a negotiated monthly payment per employee.

The Bankruptcy Court relied on two cases, one allowing a claim for premiums by an insurance company and one allowing a claim by a union health and welfare fund. *See In re Saco Local Dev. Corp.*, 23 B.R. 644 (Bankr.D.Maine 1982), *aff'd* 711 F.2d 441 (1st Cir.1983); *In re Robinson Truck Line, Inc.*, 47 B.R. 631 (Bankr.D.Miss. 1985). This Court finds that the Bankruptcy Court's reliance on these cases, and on *In re Saco* in particular, is misplaced. Neither of the cases cited establishes the two-part test on which the Bankruptcy Court relied, nor do they support the Bankruptcy Court's analysis or conclusion.

In *In re Saco*, an insurance company filed a proof of claim for unpaid premiums due on the Debtor's insurance policies for its employees. The Bankruptcy Court for the District of Maine found that even though the insurance policies were not the result of a collective bargaining agreement, the unpaid premiums were "contributions to an employee benefits plan" under § 507(a)(4). *In re Saco Local Dev. Corp.*, 23 B.R. 644, 647 (Bankr.D.Maine 1982). On appeal, the United States Court of Appeals for the First Circuit agreed, and noted that § 507(a)(4) itself should not be interpreted narrowly. *In re Saco Local Dev. Corp.*, 711 F.2d 441, 449 (1st Cir.1983). The court stated, "Insurance is no less a fringe benefit because it is granted by an employer 'unilaterally' rather than being provided under the terms of a collective bargaining agreement." *Id.*

■ Adopting the First Circuit's reasoning, it is unlikely that Congress would have intended to allow as a priority an insurance company's claim for unpaid premiums, yet would deny priority status to individual employees who were owed insurance reimbursements. In fact, one argument that the court in *In re Saco* rejected was that the individual employees, not the insurance company, had the right to obtain the priority for premiums. *See id.* The court stated, "To allow the insurer to obtain its premiums through the priority would seem the surest way to provide the employees with the policy benefits to which they are entitled." *Id.* In the instant case, therefore, the Court finds that it was reversible error for the Bankruptcy Court to hold that § 507(a)(4) requires a "clearly established plan ... underwritten and operated by a recognized third-party insurer...."

■ The Court also finds that although Air Florida's self-insurance program may have been loosely administered and benefits irregularly paid, it was nevertheless an employee benefit plan for purposes of § 507(a)(4). This Court cannot conclude that a plan does not qualify under § 507(a)(4) simply because it is inefficiently managed. The self-insurance plan was, in fact, a continuation of and a substitute for the John Hancock plan that Air Florida could no longer afford. If Air Florida's reorganization petitions had been filed while its insurance plan was still underwritten by John Hancock, there is no doubt that the insurance company would be entitled to claim the unpaid premiums as a priority. *In re Saco, supra.* The dictates of logic and consistency with the broad view of employee benefit plans compel this Court to extend the same privilege to the individual employees who have outstanding claims for reimbursement for covered medical expenses. The judgment of the Bankruptcy Court is therefore reversed as to the medical expenses issue.

### Furlough Pay

■ When Air Florida filed its reorganization petitions in July 1984, the company terminated all of its employment contracts. With the exceptions of the pilots and flight attendants, all of the employees' collective bargaining agreements provided for severance pay or furlough pay, depending on the nature of the discharge. The pilots' and flight attendants' contracts provided for furlough pay but not severance pay. All of the former Air Florida employees received severance pay when they were terminated.

When the airline resumed flight operations, many of the former employees were re-hired. The Committee contends that these employees were furloughed rather than terminated and are therefore entitled to furlough pay as a priority under 11 U.S.C. § 507(a)(3).

The Bankruptcy Court found as a factual matter that the employees were terminated rather than furloughed because the furlough provisions encompassed temporary reductions in the labor force such as lay-offs, rather than termination of all employees. Based upon the testimony presented, the Bankruptcy Court found that the company had not intended to provide furlough pay upon a cessation of business; rather, the collective bargaining agreements provided for severance pay in such an event. Under Bankruptcy Rule 8013, the Bankruptcy Court's findings of fact can be reversed only if clearly erroneous. Because the findings as to furlough pay are questions of fact and are based on the Bankruptcy Court's interpretation of the testimony before it, the finding as to furlough pay is affirmed.

### Flight Crew Offset

As part of its pre-petition standard operating procedure, Air Florida gave pilots and flight attendants a $125 per diem advance of flight pay that was ultimately deducted from the employee's final paycheck. Because the bankruptcy petitions prevented issuance of final paychecks, Jet Florida sought to deduct the per diem advances from the employees' § 507(a)(3) priority wage claims. The Bankruptcy Court found instead that

> the $125 offset should be applied first against the unsecured non-priority portion of claims made by flight crew employees who have filed timely Proofs of claim and only if such non-priority claim is exhausted should the balance of the $125 offset, if any, be applied against the priority portion of such employee claims.

Order of December 1, 1986 at 8.

In concluding that it would be inequitable to set off the per diem advances against priority claims, the Bankruptcy Court relied on *In re Braniff Airways, Inc.,* 42 B.R. 443 (Bankr.N.D.Tex.1984). In *In re Braniff,* the debtor sought to set off priority claims by amounts due from the creditor, the United States. After noting that debtors as well as creditors have the right to assert setoff under § 553 of the Bankruptcy Code, the court held that to allow the debtor to avoid paying priority claims in full would completely defeat the statutory scheme of priorities. *Id.* at 448 & 452. As a matter of equity, the court found that the debtor's claim should be set off first against the non-priority claims of the creditor. *Id.* at 452.

Applying this equitable principle, the Bankruptcy Court in the instant case found that Jet Florida's claim for the per diem advances should be applied first against any unsecured claim an employee has, and then against the priority claims. The judgment of the Bankruptcy Court on this issue is affirmed.

### Conclusion

Having heard oral argument on the issues presented by this appeal, and being fully advised in the premises of this case, the decision of the Bankruptcy Court is affirmed in part and reversed in part. The Order of December 1, 1986 is hereby affirmed as to the issues of furlough pay and flight crew offsets, and is reversed as to the classification of medical expenses.