In re ALLEGHENY INTERNATIONAL, INC., Sunbeam Corporation, Sunbeam Holdings, Inc., Almet/Lawnlite, Inc., Chemetron Corporation, Integrated Specialties, Inc., Allegheny International (USA), Inc., Al–Industrial Products, Inc., Allegheny International Exercise Co., Woodshaft, Inc., Chemetron Investments, Inc., Infoswitch, Inc., and Eliskim, Inc., Debtors.

ALLEGHENY INTERNATIONAL, INC., et al., Movants,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Respondent.

Claim No. 4559.
Motion Nos. 88–7341M, 88–00448 JLC.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 26, 1992.

George L. Cass, Buchanan Ingersoll, P.C., Pittsburgh, Pa., for debtor.

Stephen I. Goldring, Asst. U.S. Trustee, W.D. Pa., Pittsburgh, Pa.

Gregg P. Hirsch, Metropolitan Life Ins. Co., Herbert Meinkle, Fried, Frank, Harris, Shriver, Jacobson, New York City, for Metropolitan Life Ins. Co.

## MEMORANDUM OPINION·

JOSEPH L. COSETTI, Bankruptcy Judge.

The matter before this court is a motion by Allegheny International, Inc. ("AI") to reclassify Metropolitan Life Insurance, Co.'s ("Metropolitan") claim as non-priority general unsecured. The claim was originally filed as an administrative priority claim pursuant to Bankruptcy Code sections 503(b) and 507(a)(4). After careful review of the record and the representations made by the parties, the court has determined that Metropolitan has an administrative priority claim in the amount of $679,655.00 pursuant to § 507(a)(4).

## I. FACTS

In October, 1967, as part of an employee welfare benefit plan maintained by AI for its eligible employees and retirees and the employees and retirees of some of its subsidiaries, AI and Metropolitan entered into a group insurance policy ("group policy")

by which Metropolitan furnished services to AI and provided life, disability, accidental death, and dismemberment insurance benefits. AI and Metropolitan also entered into an Administrative Services Agreement ("ASA") under which benefits are provided to eligible employees and retirees for medical, dental, and vision care. Under the group policy, monthly premiums are payable to Metropolitan and under the ASA, monthly fees are payable to Metropolitan.

On February 20, 1988, AI filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.[1] Metropolitan filed a proof of claim in the amount of $1,487,030.00 for "due and unpaid insurance premiums and ASA fees arising under an insurance policy and administrative services agreement entered into as of October 1, 1967 and May 1, 1980, respectively, and a fee for special reports related to the administrative services agreement." Metropolitan's proof of claim asserts that the claim is entitled to priority pursuant to §§ 503(b) and 507(a)(1) for obligations which arose postpetition or, alternatively if it is determined that the obligations arose prepetition, pursuant to § 507(a)(4) as employee benefits relating to services rendered within 180 days prior to the date the petition was filed. It was discovered later that the proof of claim included certain amounts which had been or were subsequently paid by AI as administrative expenses. By Order of Court dated January 12, 1989, Metropolitan's claim was reduced and allowed in the amount of $679,655. The order, however, did not determine the priority status of the claim.

The amount of each category of claim included in the allowed amount of the proof of claim is as follows:

*Category:*

1. Premiums for life, accidental death and dismemberment and excess long-term disability insurance for active employees. $209,545.00 [2]

2. Premiums for retiree life insurance. $114,110.00

3. Fees charged under the ASA for servicing the medical benefit plans for retirees. $85,440.00

4. Fees charged under the ASA for servicing the medical benefit plans for active employees. $270,560.00

TOTAL: $679,655.00

## II. ANALYSIS

The primary issue before this court is whether the insurance premiums and administrative fees claimed by Metropolitan amount to unpaid "contributions to an employee benefit plan" within the meaning of 11 U.S.C. § 507(a)(4). Cases decided under the Bankruptcy Act of 1898 ("Act") offer very little assistance in trying to resolve this issue. Under the Act, priority was extended only to wages and commissions, and no counterpart for § 507(a)(4) existed.

Section § 507(a)(4) was enacted in response to two United States Supreme Court decisions that had excluded fringe benefits from the wage-priority provisions of the Bankruptcy Code.[3] By enacting § 507(a)(4), Congress established a special protection for individuals covered by employee benefit plans maintained by bankrupt employers. The legislative history of § 507(a)(4) makes it clear that Congress intended to overrule these two Supreme Court cases and to provide qualified priori-

1. Immediately after AI filed its bankruptcy petition it received authorization from this court to pay for, among other things, the insurance policy premiums and all costs and expenses incurred in connection with such policies for the benefit of its employees and retirees. AI also received court authorization to pay pre-petition retiree benefits and any costs required to effectuate the processing and payment of such benefits. AI ultimately did not remit all required premium and ASA fees to Metropolitan.

2. AI took the position that this amount of premiums for active employees is entitled to a priority under § 507(a)(4) in its letter dated September 21, 1989 from John A. Beighel to Greg Hirsch of Metropolitan.

3. *United States v. Embassy Restaurant,* 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1958), and *Joint Industry Bd. of Electrical Industry v. United States,* 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968).

ty protection to insurance contributions and other fringe benefits:

> Paragraph (4) overrules *United States v. Embassy Restaurant,* which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, where fringe benefits may be substituted for wage demands. (Citations omitted)

H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 69 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 6313, 5855.

Therefore, the current Bankruptcy Code adds to the wage priority and grants a priority for "unsecured claims for contributions to an employee benefit plan arising from services rendered within 180 days before the date of the filing of the petition." 11 U.S.C. § 507(a)(4). Section 507(a) of the Bankruptcy Code sets forth priorities for a number of expenses and claims, including the priority claimed by Metropolitan in the case at bar. Section 507(a) states in part:

> (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
>
> > (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only—
> >
> > (B) for each such plan, to the extent of—
> >
> > > (i) the number of employees covered by each such plan multiplied by $2,000; less
> > >
> > > (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of

such employees to any other employee benefit plan.

11 U.S.C. § 507(a)(4).

The term "employee benefit plan" is not defined by Congress in the Bankruptcy Code. The term is, however, defined in the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA"). Under the definition set forth in ERISA, an "employee benefit plan" includes:

> ... **any plan, fund, or program** which was heretofore or is hereafter **established or maintained by an employer** or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained **for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise,** (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

(emphasis added) 29 U.S.C. § 1002(1); see also 29 U.S.C. § 1002(3). To date, at least three courts which have considered this issue have found the ERISA definition applicable to 11 U.S.C. § 507(a)(4).[4] This court also believes that Congress intended the term "employee benefit plan" in 11 U.S.C. § 507(a)(4) to be defined as it is in ERISA. Since Congress did not define the term in the Bankruptcy Code, it is helpful to refer to another statute where the term is defined.[5] Moreover, legislative history has established that Congress knew that

---

**4.** *Perlstein v. Rockwood Ins. Co. (In re AOV Indus.),* 85 B.R. 183, 186 (Bankr.D.C.1988) ("We consider the term 'employee benefit plan' in 11 U.S.C. § 507(a)(4) to be consistent with the same terms as defined ... by ERISA"); *In re Jet Florida Systems, Inc.,* 80 B.R. 544 (S.D.Fla.1987); *In re Plaid Pantries, Inc.,* 137 B.R. 405 (DC Or.1991).

**5.** Cf. *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952)

("Where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken and the meaning its use will convey to the judicial mind unless otherwise instructed.").

ERISA defined "employee benefit plan" when it enacted § 507(a)(4).[6]

The term "contribution" is also not specifically defined in the Bankruptcy Code; however, ERISA provides that a program is a "plan" if it is, among other things, "established or maintained" by the employer. 29 U.S.C. § 1002(1). In the case at bar, the group policy and ASA were established and maintained by AI as a result of its regular premium payments and ASA fees to Metropolitan. Therefore, such payments and fees are "contributions" as the term is used in § 507(a)(4).

Metropolitan claims that the allowed amount of its proof of claim is entitled to priority pursuant to § 507(a)(4) because AI's group policy and the ASA fit within the ERISA definition of "employee benefit plan." It is a program which was "established [and] maintained by the employer ... for the purpose of providing for its participants" various types of benefits, all of which are listed in 29 U.S.C. § 1002(1).

Metropolitan also argues that the group policy and ASA were and are integral components of AI's employee benefit plan. Consequently, it believes that the premiums owed under the group policy and the fees owed under the ASA are "contributions" to the employee benefit plan.

AI argues that Metropolitan's claims for premiums and administrative services do not constitute "claims for contributions to an employee benefit plan." AI contends that Metropolitan simply assisted AI in administrating its employee medical benefit plans by providing administrative, actuarial, and claims processing services. AI believes that these services are similar in nature to claims of unpaid suppliers of forms and other supplies needed for the administration of the employee benefits plan.

Very few cases have decided the question of whether an insurance company is entitled to priority under § 507(a)(4). *In re*

*Saco Local Development Corp.*, 23 B.R. 644 (Bankr.D.Me.1982), aff'd 711 F.2d 441 (1st Cir.1983) is the only Circuit Court decision that has dealt with this issue. In that case, an insurance company filed a proof of claim for unpaid premiums due on the debtor's insurance policies for its employees. The Bankruptcy Court for the District of Maine found that even though the insurance policies were not the result of a collective bargaining agreement, the unpaid premiums were "contributions to an employee benefits plan" under § 507(a)(4). On appeal, the First Circuit Court of Appeals agreed with the bankruptcy court and stated that § 507(a)(4) should be read broadly.

In the case of *In re Jet Florida Systems, Inc.* 80 B.R. 544 (S.D.Fla.1987), the district court reversed a bankruptcy court decision that held that a self-insured arrangement by which Air Florida itself reimbursed individual employees for medical expenses did not constitute an "employee benefit plan" within the meaning of § 507(a)(4). In reversing the decision, the district court stated that the bankruptcy court erred as a matter of law in holding that Air Florida's self-insurance program was not an employee benefit plan under § 507(a)(4). The district court also cited *In re Saco* with approval and adopted and applied its reasoning.

It is clear that no distinction is made between a claim for unpaid contributions to an insured employee benefit plan and unpaid contributions to a self-insured employee benefit plan. Specifically on this issue the court in *Jet Florida* stated:

If Air Florida's reorganization petitions had been filed while its insurance plan was still underwritten by John Hancock, there is no doubt that the insurance company would be entitled to claim the unpaid premiums as a priority. *In re Saco, supra.* The dictates of logic and consistency with the broad view of employee benefit plans compel this Court to extend the same privilege to the individual em-

---

**6.** Bankruptcy Act Revision: Hearings on H.R. 31 and H.R. 32 Before the Subcomm. on Civil and Constitutional Rights of the House Comm. on the Judiciary, 94th Cong., 2nd Sess. 2424–2425 (1976). On April 12, 1976, representatives

of several labor organizations appeared before this House Subcommittee and urged it to adopt the term "employee benefit plan" as used in ERISA.

ployees who have outstanding claims for reimbursement for covered medical expenses.

Finally, in the case of *In re Plaid Pantries, Inc,* 137 B.R. 405 (D.Oregon, 1991), the district court recently decided that under § 507(a)(4), unpaid workers' compensation insurance premiums paid by the debtor for its employees amount to "contributions to an employee benefit plan." The district court's holding was based upon its conclusion that the applicable definition of "employee benefit plan" for the Bankruptcy Code is the same found in ERISA and that therefore, workers' compensation insurance coverage provided by the debtor is a plan providing "medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment." 29 U.S.C. § 1002(1).

This court agrees with the holdings taken in the cases discussed above. AI's position that Metropolitan's claim for unpaid contributions to an employee benefit plan under § 507(a)(4) should be divided into two categories; (1) unpaid contributions to the insured portion of AI's plan (life, accidental death, disability, and dismemberment); and (2) unpaid contributions to the self-insured portion of AI's plan (medical, dental, and vision) lacks merit.[7] It would not have been possible to administer the undisputed employee claims without Metropolitan's services. AI cuts the baby in half.

Upon consideration of the above referenced cases and the legislative history of § 507(a)(4), this court does not agree with AI's position. Both "parts" of AI's employee benefit plan, be they insured or self-insured, constitute an integral part of AI's employee benefit plan. The goal AI was trying to achieve by setting up a self-insured benefit plan was to provide its employees with health insurance coverage. The administrative mechanisms of the plans should not change the classification of the claim. Therefore, the court holds the unpaid premiums owed to Metropolitan

are "contributions to an employee benefit plan" under § 507(a)(4).

In addition, for the reasons stated previously, the administrative fees charged to AI under the self-insured portion of AI's employee benefit plan must also be considered "contributions to an employee benefit plan" under § 507(a)(4).

CONCLUSION

Having found that the terms "contributions" and "employee benefit plan" in 11 U.S.C. § 507(a)(4) are similar to those defined by ERISA, the court concludes that the insurance premiums and the administrative fees owed to Metropolitan pursuant to the ASA providing various benefits to employees and retirees are properly "contributions to an employee benefit plan". Accordingly, the court finds that Metropolitan's claim for $679,655.00 is an administrative priority claim pursuant to 11 U.S.C. § 507(a)(4). Appropriate interest should also be paid.

---

**7.** AI took expressly took this position in its letter to Metropolitan dated September 21, 1989. See n. 2 *supra.*