ALLEGHENY INTERNATIONAL,
INC. et al., Plaintiffs,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, Defendant.

Civ. A. No. 92–873.
Bankruptcy No. 88–448.

United States District Court,
W.D. Pennsylvania.

July 7, 1992.

George L. Cass, Buchanan Ingersoll,
P.C., Pittsburgh, Pa., for plaintiffs.

James D. Coats, Associate Gen. Counsel,
Metropolitan Life Ins. Co., New York City,

Dean D. Gamin, Thomson, Hine & Flory,
Cleveland, Ohio, for defendant.

## MEMORANDUM OPINION

COHILL, Chief Judge.

Before the Court is Allegheny International's appeal from the bankruptcy court's determination that certain claims filed against it by Metropolitan Life Insurance Company are entitled to priority under section 507(a)(4) of the Bankruptcy Code. For the following reasons, we will affirm the decision of the bankruptcy court.

### I. BACKGROUND

The relevant facts of this case are not in dispute. Allegheny International, Inc., now Sunbeam–Oster Company, Inc. ("AI"), filed a petition for Chapter 11 Bankruptcy protection on February 20, 1988 (the "filing date"). Prior to the filing date, Metropolitan Life Insurance Company ("Metropolitan") issued to AI a group insurance policy providing life insurance to certain pensioners of AI and its subordinates, along with more extensive insurance coverage, such as disability insurance to current employees (the "group insurance policy"). AI did not pay Metropolitan for coverage provided under those policies from January 1, 1988 until the filing date (February 20, 1988).

In addition to providing the insurance policies described above, Metropolitan also contracted with AI to perform certain administrative, actuarial and claim services to AI in connection with several self-insured health care and disability benefit plans maintained by AI and its subsidiaries for their current and former employees (the "administrative services agreement").

Metropolitan's administrative services included assisting AI in revising benefit plans, putting together information booklets, preparing financial reports concerning the plans, and preparing disclosure forms. Metropolitan's actuarial services included estimating future claims and costs and calculating rates. Its claims services included advice concerning the submission, processing and payment of claims, the provision of auditing services, advice concerning contro-

versial claims, monthly accounting services, and reports to the Internal Revenue Service. Metropolitan also paid claims against AI's various self-insurance plans by issuing drafts against a bank account maintained by AI.

In exchange for providing these administrative services, Metropolitan received a flat fee, a dollar amount for each claim paid, and a percentage of the aggregate amount of all claims paid. AI has not paid Metropolitan for services performed in December, 1987 and January and February of 1988.

On the filing date, the bankruptcy court entered Orders ("first day orders") authorizing AI and its subsidiaries to pay certain pre-petition wages and employee benefits, pre-petition medical and life benefits to retirees in accordance with existing plans, and to make all payments necessary to effectuate the Court's Orders, including payments necessary to continue insurance coverage and to provide for the administration of benefits payable to retirees.

Metropolitan continued to pay benefits under AI's Self–Insured plans by drawing on AI's bank accounts, including claims based on medical services rendered prior to the filing date. Metropolitan was paid for its post-petition services and was paid all of the premiums due for post-petition coverage on the group insurance policy.

Metropolitan filed a proof of claim with the bankruptcy court in May, 1988 for insurance premiums due under the group life insurance policy issued to AI and for fees due under the administrative services agreement. In paragraph ten of its proof of claim Metropolitan stated that:

> Metropolitan asserts priority in the amount of $1,486,350 as expenses of administration pursuant to §§ 503(b) and 507(a)(1) of the United States Bankruptcy Code ("Code") by reason of the fact that such obligations arose post-petition. Alternatively, in the event that the Court should ever find that ant portion of Metropolitan's claim are pre-petition, Metropolitan asserts priority under § 507(a)(4) of the Code as to that portion of its claims which the Court finds arises from or relates to services rendered within 180 days before the date of the filing of the petition.

On January 1, 1989, the bankruptcy court reduced the amount of Metropolitan's claim to $679,655 because of the payments AI had made to Metropolitan pursuant to the first day orders. Metropolitan's remaining claim consists of the following:

| | |
|---|---|
| Premiums for life, accidental death and dismemberment and excess long term disability insurance for active employees | $209,545.00 |
| Premiums for life insurance for retirees | $114,110.00 |
| Fees charged under the administrative services agreement for servicing the medical benefit plans for retirees | $85,440.00 |
| Fees charged under the administrative services agreement for servicing the medical benefit plans for active employees | $270,560.00 |
| Total | $679,655.00 |

The parties are in agreement that these amounts are for pre-petition premiums and service fees and do not involve any post-petition debts.

In March, 1990, AI filed a Motion to Reclassify Metropolitan's claim as a non-priority general unsecured claim. On February 27, 1992, Judge Cosetti issued an Opinion and Order allowing Metropolitan's claim to proceed as an administrative priority claim pursuant to 11 U.S.C. § 507(a)(4). 138 B.R. 171. This appeal followed.

## II. DISCUSSION

Section 507(a)(4) of the Bankruptcy Code states in relevant part:

(a) The following expenses and claims have priority in the following order:

(1) ....

(2) ....

(3) ....

(4) Fourth, allowed unsecured claims for contributions to employee benefit plans—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan the extent of—

(i) the number of employees covered by such plan multiplied by $2,000.00; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

Judge Cosetti noted in his February 20, 1992 Opinion noted that the term "employee benefit plan" is not defined in the Bankruptcy Code. Because other Courts have done so in similar situations, Judge Cosetti looked to the definition of the term employee benefit plan provided in the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq., and determined that AI's group insurance policy and administrative services agreement constituted an employee benefit plan within the meaning of that act and thus within the meaning of section 507(a)(4) as well. Judge Cosetti also determined that AI's premium payments under the group insurance plan and administrative services agreement were "contributions" to the employee benefit plans because they were necessary to establish or maintain the plan. The bankruptcy court rejected AI's argument that the fees due Metropolitan for administering the self-insured portions of AI's employee benefit plan should not be considered "contributions" to an employee benefit plan within the meaning of section 507(a)(4). Both parts of AI's benefit plan, the Court concluded, constitute an integral part of AI's employee benefit plan. The administrative mechanisms of the plans should not change the classification of the claim.

AI argues that the bankruptcy court erred in concluding that Metropolitan's claims should be prioritized for several reasons. It argues that Metropolitan's claims are not for contributions to employee retirement plans and that its claims relating to retiree benefits did not arise from services rendered within 180 days prior to the filing date within the. meaning of section 507(a)(4) of the Bankruptcy Code. In addition, AI argues that the bankruptcy court erred in awarding Metropolitan interest because Metropolitan did not request interest in its proof of claim, because the court lacks authority to allow claims that have not been filed, and because interest is generally not allowed in pre-petition claims.

Metropolitan responds that the bankruptcy court properly applied ERISA's definition of employee benefit plan to section 507(a)(4) and notes that AI fails to cite any case law in support of its assertion that bankruptcy court's analysis was improper.

Under Bankruptcy Rule 8013, the district court may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

We believe that the bankruptcy judge in this case properly concluded that Metropolitan's claims should be afforded priority under section 507(a)(4) of the Bankruptcy Code. We find that AI's self-insured health care and disability benefit plans and the group insurance policy provided by Metropolitan constitutes an employee benefit plan and that Metropolitan's claims relating to those plans were for contributions to those plans arising from services rendered within 180 days prior to the filing date within the meaning of section 507(a)(4). It would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the

expenses necessary to administer those plans. The opinion of the bankruptcy court is affirmed.

■ AI also argues that it was improper for the bankruptcy court to award Metropolitan "appropriate interest" because Metropolitan's contested claim was not an "allowed" claim as defined by AI's reorganization plan. According to the plan, allowed claims are uncontested, or are claims no longer subject to appeal. Allowed claims were due on the date the plan was approved or within thirty days of the becoming allowed claims. Because Metropolitan's claims are still under appeal, AI argues, they are not yet allowed claims and are therefore not yet due under the terms of the plan. Thus, it is inappropriate to award any interest on Metropolitan's claims.

Metropolitan argues that it is entitled to interest on its claims because the bankruptcy court held that the claims at issue were administrative and priority claims, and because under section 1129(a)(9)(B) of the Bankruptcy Code, unless administrative claims and priority claims are paid in cash on the effective date of the plan, interest must be added.

We note that the bankruptcy court stated that Metropolitan was entitled to "appropriate interest" on its claims, apparently postponing a ruling on what the appropriate amount of interest, if any, should be. Because the bankruptcy court never ruled on this issue, there is no appealable issue for this Court to resolve. In any case, it would be appropriate to leave this decision with the bankruptcy court.

An appropriate Order will be issued.

### ORDER

AND NOW, to-wit, this 7th day of July, 1992, it is ORDERED, ADJUDGED and DECREED that the Opinion and Order of the bankruptcy court dated February 20, 1992 in the above-captioned matter is AFFIRMED.