In re CARDINAL INDUSTRIES, INC. and the following substantively consolidated subsidiaries: Cardinal Industries of Florida, Inc., Cardinal Industries of Georgia, Inc., Cardinal Industries Services Corporation, Cardinal Industries Mortgage Company, Cardinal Parts Service Company, Cardinal Lodging Group, Inc., Cardinal Apartment Management Group, Inc., Cardinal Industries Development Corporation, Cardinal Industries of Florida Services Corporation, Cardinal Industries of Georgia Services Corporation, Cardinal Furniture Leasing Company, Cardinal Retirement Management Group, Inc., Cardinal Acceptance Corporation, Maxim Building Corporation, Cardinal Advisory Group, Inc., Columbus Construction, Inc., Cardinal Securities Corporation, Cardinal Manufacturing, Inc., Camden Development Corporation, Cardinal Compensation, Inc., Cardinal Regulatory of Kentucky, Inc., Cardinal Regulatory of Michigan, Inc., Cardinal Regulatory of West Virginia, Inc., Cardinal Land Corporation, Cardinal Community Corporation, Cardinal Industries Insurance Agencies, Inc., CII of Pennsylvania, Inc., Cardinal Industries of Texas, Inc., Cardinal Industries Development Corporation of Texas, Inc., Cardinal Realty Company, Cardinal Industries Realty Corporation, Debtors.

Bankruptcy No. 2–89 02779.

United States Bankruptcy Court,
S.D. Ohio, E.D.

Oct. 12, 1993.

See also 160 B.R. 83.

---

Grady L. Pettigrew, Jr. and Carla I. Struble, Arter & Hadden, Columbus, OH, for Prudential Ins. Co.

James H. Bownas, Gen. Counsel, Cardinal Realty Services, Inc., Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, and Fordham E. Huffman, Nancy Paine Sabol, Scott D. Phillips and Jeffrey B. Ellman, Jones, Day, Reavis & Pogue, Columbus, OH, for Cardinal Realty Services, Inc.

## OPINION AND ORDER ON MOTION TO RECLASSIFY THE CLAIM OF PRUDENTIAL INSURANCE COMPANY OF AMERICA

BARBARA J. SELLERS, Bankruptcy Judge.

Cardinal Realty Services, Inc. ("CRSI") seeks to reclassify a portion of claim # 9421B filed by the Prudential Insurance Company of America ("Prudential"). The parties agreed to the essential facts and have submitted the matter to the Court on briefs.

The Court has jurisdiction in this contested matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) which this bankruptcy judge may hear and determine.

### I. *Factual Background and the Positions of the Parties*

Cardinal Industries, Inc. ("CII"), predecessor in interest to CRSI, provided certain insurance benefits to its employees and employees of its corporate affiliates ("Cardinal Employees"). Through Prudential, CII provided life, accidental death, dismemberment, optional death and dismemberment, and optional supplemental life insurance. (Brief of CRSI, p. 2). CRSI refers to this coverage collectively as the "Insured Plan." CII paid the premiums for this coverage on behalf of the Cardinal Employees. CRSI does not dispute that $4,684.60 of Prudential's claim # 9421B constitutes premiums owing for the Insured Plan. CRSI acknowledges that this portion of Prudential's claim # 9421B is entitled to priority under 11 U.S.C. § 507(a)(4).

CII also provided the Cardinal Employees with medical and dental insurance through a self-insured plan ("Self–Insured Plan") which Prudential administered. Prudential processed claims for the Self–Insured Plan and received a fee for those administrative services. Prudential also processed and initially paid employee health and dental claims for which it was later reimbursed by CII. (Brief of CRSI p. 2).

On May 15, 1989, when CII filed its Chapter 11 petition, Prudential was owed premiums for the Insured Plan, reimbursements for claims paid and fees for administrative services for the Self–Insured Plan. Shortly thereafter CII obtained Court approval to pay the premiums and reimburse Prudential for prepetition outstanding employee claims. That order specifically prohibited payment to Prudential for prepetition administrative services fees. Those fees are now at issue.

Prudential asserts a claim in the amount of $152,070.40 for prepetition administrative services for fees for the Self–Insured Plan. The parties agree that, at least for now, the amount is not disputed. Rather, the dispute relates to Prudential's assertion of a priority status for this unsecured claim pursuant to 11 U.S.C. § 507(a)(4). Prudential contends that its fees for administering the Self–Insured Plan were an integral part of CII's "employee benefit plan" and therefore, are "contributions to an employee benefit plan"

within the meaning of 11 U.S.C. § 507(a)(4). Prudential relies primarily on *Allegheny International, Inc. v. Metropolitan Insurance Company, (In re Allegheny International, Inc.)* 138 B.R. 171 (Bankr.W.D.Pa.), *aff'd* 145 B.R. 820 (W.D.Pa.1992).

CRSI urges the Court not to adopt such an expansive view of contributions to an employee benefit plan under 11 U.S.C. § 507(a)(4). Further, CRSI contends that the court in *Allegheny* used a faulty analysis to reach its conclusions. CRSI concludes that Prudential's fees for administrative services are not "contributions" under 11 U.S.C. § 507(a)(4) and, thus, are not entitled to priority.

## II. *Conclusions of Law*

Section 507(a)(4) of Title 11 provides a fourth priority for allowed unsecured claims for contributions to an employee benefit plan, subject to certain restrictions delineated in that subsection which are not applicable to this dispute. Courts have interpreted this provision broadly to include premiums paid by employers for employee insurance plans. In *In re Saco Local Development Corporation*, 711 F.2d 441, 449 (1st Cir.1983). *See also Official Labor Creditors Committee v. Jet Florida Systems, Inc., (In re Jet Florida Systems, Inc.)*, 80 B.R. 544, 548 (S.D.Fla. 1987) (§ 507(a)(4) priority extended to contributions under a self-insurance plan.)

CRSI does not dispute the priority status of the portion of Prudential's claim which represents unpaid premiums or reimbursements for claims paid under the Self–Insured Plan. The narrow issue before the Court is whether Prudential's fees for administrative services for the Self–Insured Plan are entitled to priority under 11 U.S.C. § 507(a)(4).

The facts presented in *Allegheny* are very similar to those presented here. 138 B.R. 171. The debtor in *Allegheny* maintained two plans, one of which was a self-insured plan which Metropolitan Life Insurance Company administered. Under an administrative services agreement with the debtor, Metropolitan provided "administrative, actuarial and claims processing services" for which the debtor paid a fee. 138 B.R. at 174. The court found that Metropolitan's fees for services for administering the debtor's self-insured plan were entitled to priority under 11 U.S.C. § 507(a)(4). 138 B.R. at 175.

The Allegheny court's analysis focuses primarily on whether self-insured plans should be viewed differently from insurance plans funded by premium payments. The court determined that "both 'parts' of debtor's employee benefit plan, be they insured or self-insured, constitute an integral part of [the debtor's] employee benefit plan. * * * The administrative mechanisms of the plans should not change the classification of the claim." 138 B.R. at 175. Almost as an afterthought, the bankruptcy judge further held that "the administrative fees charged to [the debtor] under the self-insured portion of [the debtor's] employee benefit plan must also be considered 'contributions to an employee benefit plan' under § 507(a)(4)." 138 B.R. at 175.

On appeal, the district judge affirmed the bankruptcy judge's holding in all respects. The district judge held that "it would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans." 145 B.R. at 822–823.

This Court agrees with the conclusion reached by the bankruptcy judge and district judge in *Allegheny*. Proper administration of a self-insured fund is essential to ensure that employees' claims are properly handled. Priority is afforded the unpaid contributions "to provide the employees with the policy benefits to which they are entitled." *Saco*, 711 F.2d at 449. But under a self-insured plan which is administered by a third party, giving priority solely to the direct contributions from the employer accomplishes only half the desired result. Unless the employees' claims are properly administered, processed and paid, affording priority to the contributions is meaningless. The ultimate policy goal of 11 U.S.C. § 507(a)(4) requires that expenses associated with administering a self-insured plan also be afforded priority under that section. Any other interpretation of 11 U.S.C. § 507(a)(4) would defeat its purpose.

This reasoning is further supported by case law which grants § 507(a)(4) priority to unpaid premiums for employee benefit plans. A portion of any such premium is attributable to the costs of administering the insurance plans. Under a self-insured plan, where there is no set premium with costs of administration included, the separately billed fees for administrative services should be equally entitled to priority under § 507(a)(4).

### III. *Conclusion*

The Court finds that Prudential's claim for fees for administering CII's Self–Insured Plan should have the same priority status as advances from the administrator to pay claims under such plan. The Court makes no findings regarding any factual issues raised by this conclusion of law. The parties have agreed that these issues will be resolved at a later time. For these reasons, CRSI's motion to reclassify claim # 9421B filed by Prudential is hereby DENIED without prejudice.

IT IS SO ORDERED.