In the Matter of LUMMUS
INDUSTRIES, INC.,
Debtor.

OFFICIAL CREDITORS' COMMITTEE OF LUMMUS INDUSTRIES, INC. on Behalf of LUMMUS INDUSTRIES, INC., Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC., Defendant.

Bankruptcy No. 92–41530.
Adv. No. 94–4053.

United States Bankruptcy Court,
M.D. Georgia,
Columbus Division.

Feb. 20, 1996.

Fife M. Whiteside, Columbus, Georgia, Ward Stone, Jr., Macon, Georgia, for Plaintiff.

George H. Myshrall, Jr., Michael R. Hurst, Atlanta, Georgia, for Defendant.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Blue Cross and Blue Shield of Georgia, Inc., Defendant, filed on December 18, 1995,

a motion for summary judgment. The Official Creditors' Committee of Lummus Industries, Inc. on Behalf of Lummus Industries, Inc., Plaintiff, filed on December 18, 1995, a motion for partial summary judgment. The Court, having considered the record, the stipulation of facts, and the briefs of counsel, now publishes this memorandum opinion on the motions for summary judgment.

The relevant facts are not in dispute. Defendant is a nonprofit health care corporation. Defendant provides health care coverage for individual and group insurance plans. Defendant also administers group insurance plans for businesses.

Lummus Industries, Inc., Debtor, provided health insurance coverage to its employees through a self-funded employee welfare benefit plan (the "plan"). Defendant administered the plan under a Cost Plus Agreement. Defendant would receive and review health insurance claims for Debtor's employees. Defendant would pay claims for covered services. Defendant would then seek reimbursement from Debtor for claims paid and for administrative fees as provided in the Cost Plus Agreement.

Debtor filed a petition under Chapter 11 of the Bankruptcy Code on November 3, 1992. At the time of the bankruptcy filing, Defendant had not been reimbursed for health care claims in the amount of $116,202.28 and for administrative fees in the amount of $51,448.02. These health care claims and administrative fees accumulated within 180 days of Debtor's bankruptcy filing.

Defendant timely filed a proof of claim in the amount of $167,650.30. Defendant's claim was filed as an unsecured priority claim under 11 U.S.C.A. § 507(a)(4).

Debtor, in its bankruptcy petition and schedules, lists Defendant as having an undisputed, unsecured priority claim. Schedule E shows:

"SCHEDULE 'E' SUPPLEMENT— HEALTH CARE PLAN

1. Creditor—Health care plan for Lummus Industries, Inc.'s employees, retirees and COBRA participants pursuant to Cost Plus Agreement entered into by Blue Cross and Blue Shield of Georgia, Inc., (Plan) and Lummus Industries, Inc. (Employer) for Group Master Contract Numbers 1368, 1369, 10572, 21941, 22016, 22017[,] 22378 and 22550 (Contract) c/o Blue Cross and Blue Shield of Georgia, Inc. acting as administrative agent for the Plan provided to Lummus Industries, Inc.'s employees, retirees and COBRA participants.

Claim—$290,000 (approximately)

Type of Claim—Unpaid or unreimbursed health insurance claims.

Blue Cross and Blue Shield of Georgia, Inc.

Post Office Box 7368

Columbus, GA 31908"

The Court entered on March 11, 1994, an order confirming Debtor's Chapter 11 plan. The terms of the confirmed plan provide that Plaintiff may object to the claims of creditors. Plaintiff filed on August 25, 1994, an objection and counterclaim to Defendant's proof of claim.[1] Defendant filed its response on October 21, 1994.

Plaintiff concedes that Defendant is owed the sum stated in its proof of claim ($167,650.30). Plaintiff concedes that, as to Defendant's claim, all but one of the requirements for unsecured, priority status have been satisfied.

■ The sole issue presented to the Court is whether Defendant's claim represents "contributions to an employee benefit plan" under 11 U.S.C.A. § 507(a)(4). That section, at the relevant time,[2] provided:

§ 507. Priorities

(a) The following expenses and claims have priority in the following order:

. . . .

---

1. Plaintiff's counterclaim is not at issue in the motions for summary judgment.

2. In 1994, section 507(a)(4)(B)(i) was amended to increase to $4,000 the dollar limit payable

under this section. Plaintiff and Defendant agree that the amendment does not affect the issue presented to the Court.

(4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—

(A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—

(i) the number of employees covered by each such plan multiplied by $2,000; less

(ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

11 U.S.C.A. § 507(a)(4) (West 1993).

Simply stated, the sole issue is whether Defendant's claim is an unsecured priority claim or a general unsecured claim.

It is clear that Debtor provided health care benefits to its employees. Plaintiff concedes that Debtor's health care reimbursement or self-insurance plan was part of the compensation for Debtor's employees. *Plaintiff's Brief,* p. 7 (filed Dec. 18, 1995). Plaintiff concedes that "consequently, it is unquestionable that [Debtor's] employees themselves would be claim holders (with respect to such unpaid medical claims) entitled to priority under 11 U.S.C. § 507(a)(4)." *Id.* p. 8. Plaintiff contends, however, that Defendant simply became a lender to Debtor by paying the health care claims of Debtor's employees. *Id.*

Most courts hold that the claims of insurance carriers for unpaid health insurance premiums are entitled to priority under section 507(a)(4). *Employers Insurance of Wausau v. Plaid Pantries, Inc.,* 10 F.3d 605 (9th Cir.1993) (workers' compensation premiums entitled to priority); *In re Saco Local Development Corp.,* 711 F.2d 441, 449 (1st Cir.1983) (allowing "the insurer to obtain its premiums though the priority would seem the surest way to provide the employees with the policy benefits to which they are enti-

tled"); *Official Labor Creditors Committee v. Jet Florida Systems, Inc. (In re Jet Florida Systems, Inc.),* 80 B.R. 544, 548 (S.D.Fla. 1987) (insurance company's unpaid premiums entitled to priority); *Perlstein v. Rockwood Insurance Co. (In re AOV Industries, Inc.),* 85 B.R. 183 (Bankr.D.C.1988) (workers' compensation premium entitled to priority); *In re Fenton,* 178 B.R. 582, 586 (Bankr.D.C. 1995) ("overriding intent of granting priority to these benefit plans is to provide the employees with the policy benefits to which they are entitled"); *see also In re Jet Florida Systems, Inc.,* 80 B.R. at 546–48 (accrued medical expenses of employees of self-insured debtor entitled to priority under section 507(a)(4); *contra In re AER–Aerotron, Inc.,* 182 B.R. 725, 727 (Bankr.E.D.N.C.1995) (unpaid health insurance premiums do not arise from employees' services or contributions to the employees and are not entitled to priority).

In *Employers Insurance of Wausau, Inc. v. Ramette (In re HLM Corp.),*[3] the Eighth Circuit Court of Appeals held that unpaid workers' compensation insurance premiums are not entitled to priority because workers' compensation benefits are not bargained-for substitutes for wages. Under state law, workers' compensation insurance is mandated by statute. The circuit court, however, stated:

The Bankruptcy Code itself does not define the phrase "contributions to an employee benefit plan," nor does it offer a representative list of "contributions" that would be covered by the Code. Nevertheless, the legislative history is instructive and illuminating.

In referring to the legislative history of the Code section, the bankruptcy judge observed:

Section 507(a)(4) was included in the Code to overrule *United States v. Embassy Restaurant,* 359 U.S. 29 [79 S.Ct. 554, 3 L.Ed.2d 601 (1959) ] (1958) and *Joint Industry Board v. United States,* 391 U.S. 224 [88 S.Ct. 1491, 20 L.Ed.2d 546] (1968) which held that fringe benefits were not entitled to wage priority

**3.** 62 F.3d 224 (8th Cir.1995).

status. The theory behind § 507(a)(4) is that, in the realities of collective bargaining agreement negotiations, employees may give up certain claims for wages in exchange for fringe benefits. As a result, the fringe benefits earned 180 days before the filing of a bankruptcy petition should be entitled to priority in the same way and for the same reason that wages are entitled to priority. H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977), [reprinted in] U.S.Code Cong. & Admin.News 1978, p. 5787. The legislative history makes it clear that § 507(a)(4) covers those types of benefits that typically are bargained for in the employer-employee setting whether as part of a collective bargaining arrangement or otherwise.

*In re HLM Corp.*, 165 B.R. [38] at 41 [ (Bankr.D.Minn.1994) ].

. . . .

... A true "benefit" would be one more commonly associated with, for example, employee life insurance benefits, where unless an employer offered a life insurance benefit plan the employee would not necessarily have coverage.

62 F.3d at 225–26.

The Court is persuaded that Defendant's claim for reimbursement in the amount of $116,202.28 is entitled to priority under section 507(a)(4).

■ Defendant also seeks priority status for its administrative fees. Courts have held that an insurance company's administrative fees are entitled to priority. *In re Cardinal Industries, Inc.*, 164 B.R. 76 (Bankr.S.D.Ohio 1993); *Allegheny International, Inc. v. Metropolitan Life Insurance Co.*, 145 B.R. 820 (W.D.Pa.1992). In *In re Cardinal Industries, Inc.*, the court stated:

## II. *Conclusions of Law*

Section 507(a)(4) of Title 11 provides a fourth priority for allowed unsecured claims for contributions to an employee benefit plan, subject to certain restrictions delineated in that subsection which are not applicable to this dispute. Courts have interpreted this provision broadly to include premiums paid by employers for employee insurance plans.

CRSI does not dispute the priority status of the portion of Prudential's claim which represents unpaid premiums or reimbursements for claims paid under the Self–Insured Plan. The narrow issue before the Court is whether Prudential's fees for administrative services for the Self–Insured Plan are entitled to priority under 11 U.S.C. § 507(a)(4).

The facts presented in *Allegheny [International, Inc. v. Metropolitan Life Ins. Co.*, 138 B.R. 171 (Bankr.W.D.Pa.1992) ] are very similar to those presented here. . . .

The *Allegheny* court's analysis focuses primarily on whether self-insured plans should be viewed differently from insurance plans funded by premium payments. The court determined that "both 'parts' of debtor's employee benefit plan, be they insured or self-insured, constitute an integral part of [the debtor's] employee benefit plan. * * * The administrative mechanisms of the plans should not change the classification of the claim." 138 B.R. at 175. Almost as an afterthought, the bankruptcy judge further held that "the administrative fees charged to [the debtor] under the self-insured portion of [the debtor's] employee benefit plan must also be considered 'contributions to an employee benefit plan' under § 507(a)(4)." 138 B.R. at 175.

On appeal, the district judge affirmed the bankruptcy judge's holding in all respects. The district judge held that "it would be useless to prioritize expenses for contributions to an employee benefit plan and not prioritize the expenses necessary to administer those plans." 145 B.R. at 822–823.

This Court agrees with the conclusion reached by the bankruptcy judge and district judge in *Allegheny*. Proper administration of a self-insured fund is essential to ensure that employees' claims are properly handled. Priority is afforded the unpaid contributions "to provide the employees with the policy benefits to which they are entitled." *Saco*, 711 F.2d at 449. But under a self-insured plan which is adminis-

tered by a third party, giving priority solely to the direct contributions from the employer accomplishes only half the desired result. Unless the employees' claims are properly administered, processed and paid, affording priority to the contributions is meaningless. The ultimate policy goal of 11 U.S.C. § 507(a)(4) requires that expenses associated with administering a self-insured plan also be afforded priority under that section. Any other interpretation of 11 U.S.C. § 507(a)(4) would defeat its purpose.

This reasoning is further supported by case law which grants § 507(a)(4) priority to unpaid premiums for employee benefit plans. A portion of any such premium is attributable to the costs of administering the insurance plans. Under a self-insured plan, where there is no set premium with costs of administration included, the separately billed fees for administrative services should be equally entitled to priority under § 507(a)(4).

164 B.R. at 78–79.

In *Benson v. Brower's Moving & Storage, Inc.,*[4] a union pension fund sued an employer for delinquent pension contributions. The contributions were to pay for pension, annuity, and welfare benefits of employees. The Second Circuit Court of Appeals stated:

Simply put, benefit plans must be able to rely on the contribution promises of employers because plans must pay out to beneficiaries whether or not employers live up to their obligations. *See [Central States, Southeast and Southwest Areas Pension Fund v.] Gerber Truck,* 870 F.2d [1148] at 1151 [ (7th Cir.1989) ]. For this reason, Congress placed employee benefit plans in a position superior to the original

promisee, analogous to a holder in due course.

907 F.2d at 314.

The Court is persuaded that Defendant's claim for administrative fees is entitled to priority under section 507(a)(4). Debtor provided health care benefits to its employees. Debtor agreed to contribute to the health care plan by making reimbursement and administrative fee payments to Defendant.

An order in accordance with this memorandum opinion will be entered this date.

### *ORDER*

In accordance with the memorandum opinion entered this date; it is

ORDERED that the motion for summary judgment filed on the 18th day of December, 1995, by Blue Cross and Blue Shield of Georgia, Inc., Defendant, hereby is granted; and it is further

ORDERED that the motion for partial summary judgment filed on the 18th day of December, 1995, by the Official Creditors' Committee of Lummus Industries, Inc. on Behalf of Lummus Industries, Inc., Plaintiff, hereby is denied; and it is further

ORDERED that the proof of claim of Blue Cross and Blue Shield of Georgia, Inc., Defendant, in the amount of $167,650.30 is entitled to priority under section 507(a)(4) of the Bankruptcy Code.

---

**4.** 907 F.2d 310 (2d Cir.), *cert. denied,* 498 U.S. 982, 111 S.Ct. 511, 112 L.Ed.2d 524 (1990). Although *Benson* did not involve priority status

of a bankruptcy claim, the Court is persuaded that the court's language in *Benson* is relevant to the issue at bar.