906 F.2d 1440
 66 A.F.T.R.2d 90-5315, 59 USLW 2030, 90-2
USTC P 50,484,
23 Collier Bankr.Cas.2d 374, 20 Bankr.Ct.Dec. 1143,
Bankr. L. Rep. P 73,516
 In re Rebecca Ann ROBERTS, formerly known as Rebecca Banks;
Anthony Jerome Roberts, Debtors.
Rebecca Ann ROBERTS; Anthony Jerome Roberts, Appellees,
v.
UNITED STATES of America, Appellant.
 No. 89-5145.
 United States Court of Appeals,
Tenth Circuit.
 June 27, 1990.
 
 Scott Hamilton, Legal Services of Eastern Oklahoma, Inc., Tulsa, Okl., for appellees.
 Kevin M. Brown, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D.C. (Shirley D. Peterson, Asst. Atty. Gen., and Gary R. Allen and Gary D. Gray, Attys., Tax Div., Dept. of Justice, Washington, D.C., with him on the briefs), for appellant.
 Before McKAY, ANDERSON, Circuit Judges, and BROWN,* District Judge.
 STEPHEN H. ANDERSON, Circuit Judge.
 
 
 1
 The sole issue before us on appeal is whether a discharge in bankruptcy also discharges tax penalties related to nondischargeable tax liabilities incurred more than three years before the filing of the bankruptcy petition. The government appeals the district court's order affirming the bankruptcy court's ruling that such tax penalties are dischargeable pursuant to section 523(a)(7)(B) of the Bankruptcy Code. 11 U.S.C. Sec. 523(a)(7)(B). We hold that these penalties are dischargeable, and affirm the judgment of the district court.
 
 
 2
 The debtors, Rebecca and Anthony Roberts, failed to file federal income tax returns for 1982 and 1983, and the IRS assessed taxes, penalties, and interest for those years. On June 10, 1988, the debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, 11 U.S.C. Secs. 101-1103. On July 20, 1988 they filed a complaint in the bankruptcy court seeking a determination of the dischargeability of the penalty portion of the tax liability. The bankruptcy court ruled that the tax penalties were not excepted from discharge under the statutory language of section 523(a)(7) because they related to events that occurred more than three years prior to the filing of the bankruptcy petition. In re Roberts, 94 B.R. 707 (Bankr.N.D.Okla.1989). On the government's appeal, the district court affirmed.
 
 
 3
 Section 523(a)(7) proscribes the discharge of any governmental fine[1] or penalty:
 
 
 4
 other than a tax penalty--
 
 
 5
 (A) relating to a tax [which is itself dischargeable]; or
 
 
 6
 (B) imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition....
 
 
 7
 Courts and commentators have disagreed as to whether or not the language of subsections (A) and (B) should be read literally in the disjunctive so as to allow the discharge of any tax penalty for taxable periods more than three years before the bankruptcy petition even if the underlying tax liability is not dischargeable. Compare In re Burns, 887 F.2d 1541, 1543-52 (11th Cir.1989) with Cassidy v. Commissioner, 814 F.2d 477, 480-81 (7th Cir.1987); In re Hartman, 110 B.R. 951 (D.Kan.1990); In re Ferrara, 103 B.R. 870, 872-73 (Bankr.N.D.Ohio 1989); In re Harris, 59 B.R. 545, 549 (Bankr.W.D.Va.1986); In re Gerulis, 56 B.R. 283, 286 (Bankr.D.Minn.1985); In re Carlton, 19 B.R. 73 (D.N.M.1982); 3 Collier on Bankruptcy, p 523.06 (15th ed. 1989).
 
 
 8
 "When statutory language is not ambiguous, it is conclusive 'absent a clearly expressed legislative intent to the contrary.' " Miller v. Commissioner, 836 F.2d 1274, 1283 (10th Cir.1988) (quoting Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980)). Such an expression of contrary legislative intent must appear on the face of the statute, read in its entirety; beyond the statute itself, "legislative history should be used to resolve ambiguity, not create it." Miller, 836 F.2d at 1283 (citing United States v. Missouri Pa. R.R., 278 U.S. 269, 278, 49 S.Ct. 133, 136, 73 L.Ed. 322 (1929); United States v. Rone, 598 F.2d 564, 569 (9th Cir.1979), cert. denied, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980)); see also United States v. Brian N., 900 F.2d 218, 221 (10th Cir.1990) (refusing to fully analyze legislative history because statutory language was unambiguous). Applying these principles, we find no provision in the Bankruptcy Code which indicates that the words of section 523(a)(7)(B) do not mean what they say. Because the tax penalties were assessed for the tax years 1982 and 1983, the penalties were "imposed with respect to a transaction or event that occurred before three years before the date of the filing of the petition" and are dischargeable.
 
 
 9
 The government's arguments are premised entirely on its reading of the legislative history of this provision. The most conclusive example of legislative history cited by the government is a Joint Statement (hereinafter "Joint Statement") issued by the managers of the legislation in lieu of a conference committee report.[2] The Joint Statement reads:
 
 
 10
 [T]ax penalties which are basically punitive in nature are to be nondischargeable only if the penalty is computed by reference to a related tax liability which is nondischargeable or, if the amount of the penalty is not computed by reference to a tax liability, the transaction or event giving rise to the penalty occurred during the three-year period ending on the date of the petition.
 
 
 11
 Statement of Sen. DeConcini, reprinted in 1978 U.S.Code Cong. & Admin.News 6505, 6569.
 
 
 12
 The government urges first that the two subsections, 11 U.S.C. Sec. 523(a)(7)(A) and (B), must be read in the conjunctive rather than the disjunctive. It suggests that the drafters' use of the disjunctive "or" in the statutory language is an anomaly and so insignificant that it should be ignored in favor of the legislative history. However, the legislative history, whatever its weight, does not support the government's first position. If the two subsections were read in the conjunctive, a tax penalty, to be dischargeable would have to be both: (1) computed by reference to a dischargeable tax, and (2) related to a taxable year or other taxable event occurring more than three years prior to the bankruptcy petition. Under the government's proposed conjunctive interpretation, penalties assessed on dischargeable tax liabilities arising less than three years before bankruptcy could not be discharged. Such an approach is inconsistent with the viewpoint voiced by the legislation's managers as well as the express language of the statute.
 
 
 13
 The government's next position, and the one deserving more attention, is that the language of subsection (B), when read together with subsection (A), is sufficiently ambiguous to warrant looking beyond the statute to the legislative history. Although this argument has some initial appeal, it does not withstand close scrutiny.
 
 
 14
 First, the language of subsection (A) and subsection (B) is neither ambiguous nor difficult to understand. Subsection (A) provides that a tax penalty is dischargeable if it is related to a nondischargeable tax liability. Subsection (B) creates an arbitrary cutoff of three years, after which all uncollected tax penalties may be discharged in bankruptcy. Although this time limit is an innovation on pre-Code law, see In re Burns, 887 F.2d at 1544, it is nevertheless clear and understandable.[3] The only confusion created is the result of the government's insistence that such a blanket discharge after three years is not what Congress intended. That the statutory enactment differs from widely held expectations does not necessarily demonstrate ambiguity in its language.[4]
 
 
 15
 Reading subsection (B) to allow the discharge of tax penalties dating back more than three years does not render subsection (A) meaningless. Obviously, tax penalties relating to events less than three years before bankruptcy may still be dischargeable under subsection (A) if the underlying tax liability is dischargeable. Contrary to the government's position at oral argument, the bankruptcy court's interpretation does not nullify the language of subsection (A).
 
 
 16
 The government mischaracterizes its appeal to the legislative history as an effort to demonstrate the true meaning of the statutory language. That would be true if the statute could be reasonably read to effectuate the scheme urged by the government. In order to give the language such a meaning however, the operative language of subsection (B) relating to a tax penalty "imposed with respect to a transaction or event" must be limited so as to apply only to "those [tax penalties] that are not computed by reference to a tax liability." Government's Brief at 13. Subsection (A) must then be read to apply only to penalties which are so computed, thus making the two subsections mutually exclusive.
 
 
 17
 The actual language simply does not stretch that far. Subsection (A) refers, not to penalties "computed by reference" to a dischargeable tax, but rather to any penalty "relating to" such a tax.[5] The statutory language refers to the nature of the penalty rather than the method of computing it. Likewise, the language of subsection (B) does not lend itself to the limitation which the government seeks to impose on its application. Many tax penalties are "imposed with respect to a transaction or event" and are nevertheless computed by reference to a tax liability.[6]
 
 
 18
 The government's proposed scheme, which treats tax penalties differently depending on whether the penalty is arithmetically computed by reference to a tax liability, is not a reasonable interpretation of the language in subsections (A) and (B); it is a different scheme altogether. However one might choose to view the relative merits of the two schemes, Congress enacted the scheme outlined by the statutory language. Under the statutory scheme, a penalty related to a dischargeable tax liability is immediately dischargeable; every other penalty becomes dischargeable after three years.
 
 
 19
 Second, the legislative history does not warrant ignoring the plain statutory language. In a carefully crafted opinion, the Eleventh Circuit discussed at length the extensive series of compromises which eventually became the Bankruptcy Code. The court cited the need for strict adherence to the statutory language in such cases, and therefore refused to look to the inconclusive legislative history to defeat the plain effect of subsection (B). In re Burns, 887 F.2d at 1544-45. We agree that resort to legislative history is inappropriate in this case. As we stated in Miller v. Commissioner, 836 F.2d at 1281-82:
 
 
 20
 There are several reasons for this general adherence to the words of the statute as commonly understood. First, our limited function, in deference to the legislative process, is to interpret and apply the law, not to make it.... Second, federal laws are enacted pursuant to the United States Constitution, which requires the President's consent to enact a law approved by the members of Congress unless two-thirds of the House and Senate override the President's veto.... Committee Reports [or joint statements in lieu of such reports] are not voted on by the full membership of both Houses, nor are they submitted to the President for approval. Third, Congress and the President enact laws against a backdrop of common usage and interpretation (hence, the choice of words used) which should control when words in a statute are applied.... Congress and the President approve or disapprove based upon the language contained in the enactment.
 
 
 21
 (citations omitted).
 
 
 22
 The government, offering no better justification than "the inexactness of language," would have us effectively amend the statute to correct what it believes to be a poorly drafted enactment. We will not do so. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 404, 57 S.Ct. 578, 587-88, 81 L.Ed. 703 (1937) ("The judicial function ... does not include the power of amendment under the guise of interpretation."). Indeed, we fail to see why the statute's language should be presumed inaccurate given the fact that the government's position assumes inaccuracy in the wording of the legislative history contained in the Joint Statement. Although the Joint Statement clearly proscribes nondischargeability except in limited cases, no limitation on dischargeability is mentioned. The government assumes that this language of limitation in the Joint Statement is also meant to delineate between penalties that are discharged and those that are not. Thus the government would have us believe that Congress is incapable not only of drafting a statute which reflects its intent, but that it cannot even express its intent with precision.[7]
 
 
 23
 Finally, we are unpersuaded by the opinions of other courts which have interpreted section 523(a)(7) differently. Although the Seventh Circuit has interpreted the statute to preclude discharge of a tax penalty relating to a nondischargeable underlying tax, its opinion does not describe any ambiguity in the statute or give any reason for resorting to the legislative history. Cassidy v. Commissioner, 814 F.2d 477, 481 (7th Cir.1987). Furthermore, Cassidy cites as the sole authority for the court's conclusion a Senate report with no analysis or explanation of the changes in the statute subsequent to that report. For the reasons we have discussed, we join the Eleventh Circuit in respectfully disagreeing with the Seventh Circuit's interpretation. See In re Burns, 887 F.2d at 1544.
 
 
 24
 Because the statutory language is clear and unambiguous and does not compel an irrational result, it is not necessary to refer to the legislative history to interpret its meaning. We therefore hold that a tax penalty "imposed with respect to a transaction or event that occurred before three years before" the bankruptcy petition is dischargeable in bankruptcy. The judgment of the district court is
 
 
 25
 AFFIRMED.
 
 
 
 *
 Honorable Wesley E. Brown, United States District Court for the District of Kansas, sitting by designation
 
 
 [1]
 Section 523(a)(7) does not apply to penalties or forfeitures which are "compensation for actual pecuniary loss ..." and therefore does not conflict with the overall statutory scheme providing for discharge of certain tax liabilities. 11 U.S.C. Sec. 523(a)(7); see, e.g., 11 U.S.C. Sec. 523(a)(1) (and sections cited therein)
 
 
 [2]
 We agree with the Eleventh Circuit's analysis of the various evolutions which section 523(a)(7) underwent during the legislative process prior to its adoption. In re Burns, 887 F.2d at 1545-51. Because the provision was significantly altered in the Senate and again in the informal reconciliation process between the legislation's managers, the reports of the various senate committees regarding the unamended versions are of varying significance. We view the Joint Statement as the most authoritative source of legislative history concerning the statutory language in question. See Burns, 887 F.2d at 1548-49 n. 8 (detailing the weight traditionally afforded conference committee reports); 4 Norton Bankruptcy Law and Practice, xxiii n. 1 (1989-90 ed.)
 
 
 [3]
 Although the Bankruptcy Code should not be read to "erode past bankruptcy practice absent a clear indication that Congress intended such a departure," Pennsylvania Dept. of Public Welfare v. Davenport, --- U.S. ----, ----, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990) (citing Kelley v. Robinson, 479 U.S. 36, 47, 107 S.Ct. 353, 359-60, 93 L.Ed.2d 216 (1986)), subsection (B), no matter how it is interpreted, is a departure from pre-Code practice and was clearly intended to be such. See Rev.Rul. 68-574, 1968-2 C.B. 595, 597 (no provision in pre-Code practice for three-year cutoff)
 
 
 [4]
 As the Eleventh Circuit has noted, "[i]f we err ... we do so with the knowledge that Congress is capable of crafting appropriate relief." In re Burns, 887 F.2d at 1545. It is not illogical or absurd in this regard for Congress to choose to treat tax penalties, which serve to induce obedience to the tax law, differently than the underlying tax liability. Whereas Congress might have wished to prevent bankruptcies intended solely to escape outstanding tax debts, it could have concluded that no such precaution was necessary with respect to unpaid penalties. A taxpayer discharged of burdensome tax penalties may prove better capable of generating new income from which to satisfy outstanding tax debts as well as producing new tax revenues, thus furthering the goals of both the Bankruptcy Code and the Revenue laws
 
 
 [5]
 In fact, one Senate version of the bankruptcy bill incorporated the language "computed by reference to the amount of a tax liability of the debtor" in its provision which tracks what became subsection (A). S. 2266, 95th Cong., 2d Sess. Sec. 523(a)(7)(A) (1978) (as amended and reported by Senate Finance Committee); see In re Burns, 887 F.2d at 1547. That language is noticeably absent, however, from the statute as enacted
 
 
 [6]
 A penalty might "relate to" a tax liability even if the amount of the penalty is not ascertained by means of an arithmetical formula incorporating the amount of the tax. Examples of such "related to" penalties which can be computed without reference to the related tax liability include the statutory minimum $100 for failure to file an income tax return, 26 U.S.C. Sec. 6651(a); failure to pay or underpayment of estimated income tax, 26 U.S.C. Sec. 6654, 6655 (specified percentage of underpayment frequently computed by reference to previous year's tax liability); failure to file a return by a DISC or FSC, 26 U.S.C. Sec. 6686 ($1,000 per failure); failure to file a partnership return, 26 U.S.C. Sec. 6698 ($50 per partner per month); and filing a frivolous return, 26 U.S.C. Sec. 6702 ($500 per return). On the other hand, almost every penalty computed by reference to a tax liability is nevertheless "imposed with respect to a transaction or event." See, e.g., 26 U.S.C. Sec. 6651(a)(1) (failure to file returns relating to distilled spirits, wines, beer, tobacco, cigars, cigarettes, machine guns, etc.); 26 U.S.C. Sec. 6662 (understatement of tax liability, valuation overstatement, overstatement of pension liabilities, estate or gift tax valuation understatement)
 
 
 [7]
 We do not doubt that some support for the government's position can be found in various passages of the legislative history considered as a whole. However, to conclude from such an exercise that Congress clearly intended a scheme different from the one enacted would ignore altogether the differences between the two bankruptcy bills as they entered the reconciliation process, would leave unexplained the absence of the "computation" language once present in the Senate version, and would disregard the language in the actual statute. We conclude that the intent of the "drafters" is not demonstrably at odds with the strict statutory language. See United States v. Ron Pair Enter., Inc., 489 U.S. 235, 109 S.Ct. 1026, 1031, 103 L.Ed.2d 290 (1989) (plain meaning of statute is conclusive "except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intention of its drafters.' ") (quoting Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982))