**In re SOUTHERN STAR FOODS, INC., Debtor.**

**Bankruptcy No. 94–71621.**

United States Bankruptcy Court, E.D. Oklahoma.

Oct. 10, 1996.

Pamela H. Goldberg, Hall, Estill, Hardwick, Gable, Golden & Nelson, Tulsa, OK, for Trustee.

Rodney Hayes, State Insurance Fund, Oklahoma City, OK, for State Insurance Fund.

### ORDER GRANTING TRUSTEE'S OBJECTION TO PRIORITY STATUS OF CLAIM NO. 8 OF STATE INSURANCE FUND

MICKEY DAN WILSON, Chief Judge.

This contested matter was submitted for decision upon stipulations and briefs. Upon consideration thereof, and of the record herein, this Court, pursuant to F.R.B.P. 7052 and 9014, now finds, concludes, and orders as follows.

### FINDINGS OF FACT

The parties stipulate, and the Court finds, as follows.

Southern Star Foods, Inc. ("Southern Star") contracted with the State Insurance Fund ("the Fund") for workers' compensation insurance coverage for the period between February 1, 1994 and November 17, 1994. Southern Star did not pay workers' compensation premiums due and owing to the Fund for the period between May 1, 1994 and November 17, 1994, in the total amount of $230,849.00. On or about November 17, 1994, Southern Star's workers' compensation insurance was cancelled.

On December 23, 1994, several creditors of Southern Star filed a petition for involuntary bankruptcy under 11 U.S.C. Chapter 7 against Southern Star in this Court. On January 11, 1995, an order for relief was entered in the case. On January 23, 1995, Kenneth G.M. Mather was appointed Trustee of Southern Star's Chapter 7 bankruptcy estate ("the Trustee"), and has continued to serve in that capacity to the present date.

On March 17, 1995, the Fund filed its Proof of Claim, which was numbered as Claim No. 8, asserting a priority unsecured claim under 11 U.S.C. § 507(a)(3), (4) in the amount of $230,849.00. On May 16, 1995, the Trustee filed his objection to Claim No. 8 and a brief in support thereof, contesting only the priority status of the claim, and asking that it be allowed as a nonpriority ("general") unsecured claim in the amount of $230,849.00. On June 12, 1996, the Fund filed its "... Response ..." thereto, abandoning any argument for priority status under 11 U.S.C. § 507(a)(3), conceding the nonpriority status of part of its original claim as specified below, but pressing its claim for priority status under § 507(a)(4) of the balance as specified below.

Southern Star did not cease business before the date of filing of the involuntary petition. Therefore, any priority claim of the Fund under § 507(a)(4) had to be incurred within 180 days of the date of filing of the involuntary petition, i.e. from June 26, 1994 forward. Of the Fund's total claim of $230,849.00, $43,950.73 was incurred before June

26, 1994, i.e. outside the 180–day priority period; and the balance of $186,898.27 was incurred from June 26, 1994 to November 17, 1994, i.e. inside the 180–day priority period.

On June 27, 1996, the Court held a status conference on the matter, and with the agreement of the parties issued a Scheduling Order providing for the filing of stipulations of fact, briefs and response briefs, upon which the matter would be submitted for decision. On July 19, 1996, the parties filed their joint "Stipulations of Facts For Trial." On July 31, 1996, each party filed a "... Supplemental Brief ..." Further briefs were permitted on or before August 9, 1996; but none were filed. Thereafter, the Court took the matter under advisement.

### CONCLUSIONS OF LAW

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (O), 11 U.S.C. §§ 502(b), 507(a)(4).

■ The Fund concedes that the $43,-950.73 incurred before June 26, 1994 should be allowed only as a general unsecured claim; but it argues that the balance of $186,898.27 should be allowed as a priority unsecured claim under § 507(a)(4). That statute grants fourth priority status to

> ... allowed unsecured claims for contributions to an employee benefit plan ... arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first ...

The Fund proposes that unpaid workers' compensation insurance premiums are "contributions to an employee benefit plan" within the meaning of this statute, citing *Employers Insurance of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir.1993). The Trustee argues that they are not, citing *In re HLM Corp.*, 62 F.3d 224 (9th Cir.1995) aff'g 183 B.R. 852 (D.Minn.1994) aff'g 165 B.R. 38 (Bankr.D.Minn.1994).

■ As usual in disputes over the priority of claims, this Court finds itself "involve[d in] the thankless task of determining who should share the losses incurred by an unsuccessful business and how the values of the estate should be apportioned among creditors ...," S.Rep. No. 95–989 (1978) p. 10, U.S.Code Cong. & Admin.News (1978) pp. 5787, 5796. Priority status is not favored— not because Bankruptcy Courts condone such conduct as nonpayment of workers' compensation premiums (for this Court certainly does not condone it), but because the most basic bankruptcy policy is equal treatment of creditors, *In re Hancock*, 137 B.R. 835, 837–838 (Bankr.N.D.Okl.1992), and priority status violates that policy, by giving a few favored creditors better treatment than others. This is done for reasons of special expediency, *In re First Security Mortgage Co., Inc.*, 117 B.R. 1001, 1004 (Bankr.N.D.Okl.1990). There is not enough money in Southern Star's estate to satisfy all claims of all the creditors of Southern Star; and

> To the extent one creditor's losses are mitigated by giving it a prior claim on inadequate estate assets, other creditors' losses will be aggravated,

*id.* citing *In re Mid Region Petroleum, Inc.*, 111 B.R. 968, 972 (Bankr.N.D.Okl.1990). In such unfortunate circumstances, priority status is awarded only where it is so strongly deserved as to override the claims of all other creditors to equal treatment.

The issue is essentially whether the statutory phrase "contributions to an employee benefit plan" should be construed narrowly to exclude, or broadly to include, unpaid workers' compensation insurance premiums. The phrase appears to be a term of art, is undefined by the Bankruptcy Code itself, may be read either narrowly or broadly, and in these circumstances must be considered ambiguous, *In re Heckathorn*, 199 B.R. 188, 194–95 (Bankr.N.D.Okl.1996).

Legislative history reveals that § 507(a)(4) was intended as a specific variation on § 507(a)(3). Subsection (3) grants third-priority status to claims within a fixed amount for "wages, salaries, or commissions ..." Its predecessor under the former Bankruptcy Act was Sec. 64a(2). In *United States v. Embassy Restaurant, Inc.*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959), the United States Supreme Court held that Sec. 64a(2) did not apply to "contributions by an employer to a union welfare fund which are required by a collective bargaining agreement," and

by extension to other "fringe benefits," 359 U.S. pp. 29, 33, 79 S.Ct. 554, 556, 3 L.Ed.2d pp. 601, 604. In the new Bankruptcy Code, former Sec. 64a(2) became new § 507(a)(3), supplemented by new subsection (a)(4).

Paragraph (4) overrules *United States v. Embassy Restaurant* ... which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, where fringe benefits may be substituted for wage demands. The priority granted is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others .. The dollar limit placed on the total of all contributions payable under this paragraph is equal to the difference between the maximum allowable priority under paragraph (3) ... times the number of employees covered by the plan less the actual distributions under paragraph (3) with respect to these employees,

S.Rep. No. 95–989, 95th Cong., 2nd Sess. (1978) p. 68, U.S.Code Cong. & Admin.News 1978, p. 5855.

█ That is, § 507(a)(4) was intended to grant priority status to such "claims for contributions to an employee benefit plan" as are in the nature of bargained-for wage substitutes or "fringe benefits," which are not within the letter of the previous § 507(a)(3) but are within its spirit.

This description does not fit claims for unpaid workers' compensation premiums. Workers' compensation is not bargained for by employees; it is required by the State. It cannot be bargained away; it is not a substitute for employee wages, but an obligation which employers must meet, no matter what wage levels they may pay. In this sense, the premium payments were primarily for Southern Star's own benefit.

The Fund describes Oklahoma's workers' compensation scheme as "social legislation," brief p. 16, but asserts that "there is no fund set up to pay the workers' compensation benefits in the case where the employer is not insured," *id.* p. 14. Southern Star did not meet its obligations to maintain current payments on workers' compensation insurance; the State of Oklahoma did not provide

any remedy of its own for workers left uninsured. The question is whether Southern Star's general unsecured creditors should be forced (1) to bear the burden of Southern Star's mismanagement, and (2) to give their money (i.e., money which would otherwise be paid to them in partial satisfaction of their claims) to plug the gaps in Oklahoma's "social legislation". This Court perceives no reason why they should.

The Court concludes that 11 U.S.C. § 507(a)(4) was intended to be narrowly construed and applied to "fringe benefits" in lieu of wages, and was not intended to apply to unpaid workers' compensation premiums such as those claimed by the Fund in this case. Accord, *In re HLM Corp.*, supra.

Accordingly, the Trustee's objection to priority status of Claim No. 8 of the State Insurance Fund is hereby sustained. Said claim is allowed in the amount claimed, but only as a general unsecured claim not entitled to priority.

AND IT IS SO ORDERED.