## In re SOUTHERN STAR FOODS, INC., Debtor.

## The STATE INSURANCE FUND, Appellant,

v.

## Kenneth G.M. MATHER, Trustee; and Southern Star Foods, Inc., Appellees.

BAP No. EO–96–034.
Bankruptcy No. 94–71621.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 28, 1997.

---

Mary C. Coulson, Gardere & Wynne, L.L.P., Tulsa, OK (Steven J. Adams, Gardere & Wynne, L.L.P., Tulsa, OK, and Rodney Hayes, Oklahoma City, OK, with her on the brief) for Appellant.

Pamela H. Goldberg, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa,

OK (Kenneth G.M. Mather with her on the brief) for Appellee Kenneth G.M. Mather.

Before McFEELEY, Chief Judge, PEARSON, and BOULDEN, Bankruptcy Judges.

## OPINION

McFEELEY, Chief Judge.

The State Insurance Fund (the "Fund") appeals from a final order of the United States Bankruptcy Court for the Eastern District of Oklahoma denying the Fund priority status under 11 U.S.C. § 507(a)(4).[1] *In re Southern Star Foods, Inc.*, 201 B.R. 291 (Bankr.E.D.Okla.1996). This Court has jurisdiction under 28 U.S.C. § 158(c), and reviews the statutory interpretation of the Bankruptcy Court de novo. *Tulsa Energy, Inc. v. KPL Prod. Co. (In re Tulsa Energy, Inc.)*, 111 F.3d 88, 89 (10th Cir.1997). Because this Court agrees with the Bankruptcy Court that unpaid workers' compensation premiums are not entitled to priority status pursuant to § 507(a)(4), we affirm.

## BACKGROUND

In the Bankruptcy Court the parties stipulated to the following facts: Southern Star Foods, Inc. ("Southern Star") contracted with the Fund for workers' compensation insurance coverage from February 1, 1994, to November 17, 1994, when the Fund canceled coverage for nonpayment of premiums. Southern Star did not pay the premiums due to the Fund from May 1, 1994, to November 17, 1994, in the amount of $230,849.00.

On December 23, 1994, several creditors filed an involuntary Chapter 7 petition against Southern Star. On January 11, 1995, the Court entered an order for relief and on January 23, 1995, appointed Kenneth G.M. Mather as trustee (the "Trustee") of Southern Star's bankruptcy estate.

On March 17, 1995, the Fund filed its proof of claim asserting priority status under §§ 507(a)(3) and (a)(4).[2] In response to the Trustee's objection, the Fund conceded the inapplicability of § 507(a)(3) but pursued its claim for priority under § 507(a)(4). Southern Star did not cease operations before the involuntary bankruptcy filing. Under § 507(a)(4) any priority claim of the Fund had to be incurred within 180 days before the involuntary petition was filed. The Fund amended its priority claim to $186,898.27, consisting of unpaid premiums incurred during this period. The Fund conceded that the remaining amount of their claim, $43,950.73 incurred before the 180-day period, should be allowed only as a general unsecured claim.

## DISCUSSION

■ Section 507(a)(4) gives fourth priority status to "allowed unsecured claims for contributions to an employee benefit plan ... arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first."

The Fund argues that unpaid workers' compensation insurance premiums should be granted priority status under the plain meaning of the statutory phrase, "contributions to an employee benefit plan" as held by *Employers Ins. v. Plaid Pantries, Inc.*, 10 F.3d

---

1. Future references are to title 11 of the United States Code unless otherwise noted.

2. Sections 507(a)(3) and (a)(4) read as follows:
(a) The following expenses and claims have priority in the following order:
   ...
   (3) Third, allowed unsecured claims, but only to the extent of $4,000 for each individual or corporation, as the case may be, earned within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, for—
      (A) wages, salaries, or commissions, including vacation, severance, and sick leave pay earned by an individual; ...

   (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
      (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only
      (B) for each such plan, to the extent of—
      (i) the number of employees covered by each such plan multiplied by $4,000; less
      (ii) the aggregate amount paid to such employees under paragraph (3) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

605 (9th Cir.1993). The Trustee argues that these unpaid premiums should not be granted priority status relying on the statute's legislative history and citing *Employers Ins. v. Ramette (In re HLM Corp.)*, 62 F.3d 224 (8th Cir.1995).

Priority status is not favored because the overriding policy in bankruptcy is equal treatment of creditors. *Jarboe v. SBA (In re Hancock)*, 137 B.R. 835, 837–38 (Bankr.N.D.Okla.1992), *cited in Southern Star*, 201 B.R. at 293; *see also SBA v. Preferred Door Co., Inc. (In re Preferred Door Co., Inc.)*, 990 F.2d 547, 550–51 (10th Cir. 1993) (Bankruptcy Court's equitable power does not extend to altering Bankruptcy Code's "comprehensive scheme of priorities."). Therefore, statutory priorities should be construed narrowly. *Isaac v. Temex Energy, Inc. (In re Amarex, Inc.)*, 853 F.2d 1526, 1530 (10th Cir.1988). We agree with the Bankruptcy Court that in cases such as this one in which the debtor's assets are inadequate to satisfy all creditor's claims, priority status should be awarded only where "it is so strongly deserved as to override the claims of all other creditors to equal treatment." *Southern Star*, 201 B.R. at 293; *see Employers Ins. v. Ramette (In re HLM Corp.)*, 183 B.R. 852, 856 (D.Minn.1994), *aff'd*, 62 F.3d 224 (8th Cir.1995); *cf. United States v. Dumler (In re Cassidy)*, 983 F.2d 161, 164 (10th Cir.1992) (discussing priorities under § 507(a)(7) and recognizing need to balance granting of priorities with "punishing innocent creditors of a bankrupt"). We are especially mindful of this policy in examining this issue of first impression in the Tenth Circuit.

We begin with the statutory language itself. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). However, the Bankruptcy Code does not define "contributions to an employee benefit plan." In analyzing the language of the statute, we look to the plain meaning of each term.

First, § 507(a)(4) covers "contributions" to an employee benefit plan. Here the Fund contracted with Southern Star to provide it insurance upon the payment of premiums. This insurance contract was not a "contribution" to an employee benefit plan.

*In re AER–Aerotron Inc.*, 182 B.R. 725, 727 (Bankr.E.D.N.C.1995). Similarly, premiums arising from the issuance of a policy of insurance are not generally referred to as "contributions." *In re The Montaldo Corp.*, 207 B.R. 112, 114 (Bankr.M.D.N.C.1997). A "contribution" implies some sort of voluntary act. Typically, fringe benefits such as health, life and disability insurance are voluntarily given to employees. The payment of workers' compensation insurance premiums is not "voluntary;" it is mandated by statute. *In re HLM Corp.*, 165 B.R. 38, 40 (Bankr. D.Minn.1994), *aff'd*, 183 B.R. 852, 856 (D.Minn.1994), *aff'd*, 62 F.3d 224 (8th Cir. 1995). *See also In re Allentown Moving & Storage, Inc.*, 208 B.R. 835, 837 (Bankr. E.D.Pa.1997) ("[S]ince workers' compensation benefits are a statutory requirement and not obtained through collective bargaining, they cannot be considered a 'contribution' to an employee's 'benefit plan.' Workers' compensation renders a benefit to both employer and employee.").

Second, in the context of § 507(a)(4), a "plan" is the manner in which an employer seeks to compensate an employee in ways other than wages. Workers' compensation insurance is not a "plan," but is a statutorily mandated system to spread risks of work-related injuries. *Id.;* Okla. Stat. Ann. tit. 85, §§ 1 et seq. (West 1997).

Third, insurance premiums do not arise from "services rendered" by employees as required under § 507(a)(4). The rendering of services by employees results in obligations to them, not to the insurer. *Montaldo*, 207 B.R. at 114. The claim for unpaid premiums does not arise from "services rendered" but from Southern Star's failure to pay its insurer. This makes it indistinguishable from a typical unsecured claim. *AER–Aerotron, Inc.*, 182 B.R. at 727; *HLM*, 165 B.R. at 41.

As for whether workers' compensation insurance is a "benefit" plan, it is not. Instead, it provides workers an alternative to recovery for work related injuries through the courts. *Carroll v. District Court*, 579 P.2d 828, 830 (Okla.1978). Allowing priority status for workers' compensation insurance

premiums would shift the recipient of priority status from the debtor's employees to the insurance carrier, which is not what Congress intended in § 507(a)(4).

The § 507(a)(4) priority would apply to contributions to an employee benefit plan that are made by both employees and by employers. The statute does not, however, provide a priority to third parties. Furthermore, even if a third party were to be subrogated to an employee's claim under § 507(a)(4), that claim would be denied priority pursuant to § 507(d).

*AER–Aerotron*, 182 B.R. at 727. The reference in § 507(a)(4) to "services rendered" makes clear that Congress intended a debtor's employees, not third party workers' compensation funds or insurance carriers, to be the recipients of fourth priority status. *Montaldo*, 207 B.R. at 114 ("The rendering of services by employees results in obligations to the employees and not to an insurer."). Southern Star's employees do not have a claim against Southern Star for the unpaid premiums. Allowing the Fund to have priority under § 507(a)(4), a priority intended to benefit employees, is tantamount to subrogating the Fund to the priority of the employees, which is impermissible under § 507(d).[3] *Montaldo*, 207 B.R. at 117.

Significantly, the statutory cap on the priority described in § 507(a)(4)(B) refers to the

wage priority in (a)(3) as a part of the cap's calculation. If insurance premium amounts were intended to be similarly capped, it would not be tied to the amount that employees may collect under the wage priority. *AER–Aerotron*, 182 B.R. at 727.

■ The Fund urges this Court to apply to the Bankruptcy Code the definition of employee benefit plan from the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.[4] Some of the cases granting priority status to insurance premiums have done so by incorporating the ERISA definition. *Allegheny Int'l, Inc. v. Metropolitan Life Ins. Co. (In re Allegheny Int'l, Inc.)*, 138 B.R. 171 (Bankr. W.D.Pa.1992), *aff'd*, 145 B.R. 820 (W.D.Pa. 1992); *In re Plaid Pantries, Inc.*, 137 B.R. 405, 407 (D.Or.1991), *aff'd on other grounds, Employers Ins. v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir.1993); *Perlstein v. Rockwood Ins. Co. (In re AOV Indus., Inc.)*, 85 B.R. 183 (Bankr.D.D.C.1988); *In re Saco Local Dev. Corp.*, 23 B.R. 644 (Bankr.D.Me. 1982), *aff'd*, 711 F.2d 441 (1st Cir.1983). This Court, however, declines to take this approach in the instant case because it is contrary to the rule that priorities should be given a narrow, strict construction. *Montaldo*, 207 B.R. at 115. And ERISA begins its definition section by stating that the terms are "[f]or purposes of this subchapter," indi-

---

3. Section 507(d) states:

   An entity that is subrogated to the rights of a holder of a claim of a kind specified in subsection ... (a)(4) ... of this section is not subrogated to the right of the holder of such claim to priority under such subsection.

4. ERISA defines "employee benefit plan" as follows:

   (1) The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 302(c) of the

Labor Management Relations Act, 1947 (other than pensions on retirement or death, and insurance to provide such pensions).

   (2) The terms "employee pension benefit plan" and "pension plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—

   (A) provides retirement income to employees, or

   (B) results in a deferral of income by employees....

   (3) The term "employee benefit plan" or "plan" means an employee welfare benefit plan or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan. ERISA, Pub.L.No. 93–406, § 3(1), (2), (3), 88 Stat. 829, 833 (codified as amended at 29 U.S.C. § 1002(1), (2), (3)).

cating that the reach of the definitions is only as far as the ERISA statute. 29 U.S.C. § 1002. Even though the Bankruptcy Code does not define "contributions to an employee benefit plan" it does not follow that the ERISA definition should be incorporated by this Court. This is a job for Congress. *Montaldo,* 207 B.R. at 115 (citing *HLM,* 183 B.R. at 855); *Official Labor Creditors Comm. v. Jet Florida Sys., Inc. (In re Jet Florida Sys., Inc.),* 80 B.R. 544, 547 (S.D.Fla. 1987); *see also United States v. Reorganized CF & I Fabricators,* —— U.S. ——, ——, 116 S.Ct. 2106, 2112, 135 L.Ed.2d 506 (1996) (declining to presume that certain terms in Internal Revenue Code were used in a similar manner in Bankruptcy Code without statutory indication).

Significantly, ERISA does not provide the help that the Fund wants because 29 U.S.C. § 1003(b)(3) specifically excludes from ERISA coverage a "plan [that] is maintained solely for the purpose of complying with applicable workmen's compensation laws or unemployment compensation or disability insurance laws[.]" *See Combined Management, Inc. v. Superintendent of Bureau of Ins.,* 22 F.3d 1, 4 (1st Cir.), *cert. denied,* 513 U.S. 943, 115 S.Ct. 350, 130 L.Ed.2d 306 (1994) (stating that Congress explicitly exempted state workers' compensation schemes from ERISA's purview). Moreover, " '[t]he ERISA definition and associated court guidelines were designed to effectuate the purpose of ERISA, not the Bankruptcy Code.' " *HLM,* 62 F.3d at 226 (quoting *HLM,* 183 B.R. at 855); *see also* 29 U.S.C. § 1001(b) (stating that overall policy of ERISA is to protect the interests of participants in employee benefit plans and their beneficiaries).

■ The case law yields conflicting opinions as to how broadly to interpret the meaning of "contributions to an employee benefit plan." *See Montaldo,* 207 B.R. at 114 (citing cases illustrating split in authority); *see also HLM,* 62 F.3d at 227 (workers' compensation insurance premiums not entitled to priority); *Plaid Pantries,* 10 F.3d at 607 (workers' compensation premiums entitled to priority). Therefore, the Bankruptcy Court was correct in concluding that this undefined term of art is ambiguous, and we may look to the legisla-

tive history of the statute to determine its purpose and shed light on the meaning of the phrase at issue. *O'Connor v. United States Dep't of Energy,* 942 F.2d 771, 773 (10th Cir.1991); *Roberts v. United States (In re Roberts),* 906 F.2d 1440, 1442 (10th Cir.1990).

The legislative history states as follows:

Paragraph (4) overrules *United States v. Embassy Restaurant,* 359 U.S. 29[, 79 S.Ct. 554, 3 L.Ed.2d 601] (1958[1959]), which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted. The priority granted is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others, arising from services rendered after the earlier of one year before the bankruptcy case and the date of cessation of the debtor's business.

H.R.Rep.No. 95–595, at 357 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6313 (footnote omitted); *see also* Sen.Rep.No. 95–989, at 69 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5855.

■ We agree with the Eighth Circuit that, "[t]he legislative history makes it clear that § 507(a)(4) covers those types of benefits that typically are bargained for in the employer-employee setting whether as part of a collective bargaining arrangement or otherwise." *HLM,* 62 F.3d at 226 (citing *HLM,* 165 B.R. at 41). The Bankruptcy Court in *Southern Star* concluded, and we agree, that § 507(a)(4) grants priority status to claims for contributions to employee benefit plans that are in the nature of bargained-for wage substitutes, which are truly "fringe benefits." *Southern Star,* 201 B.R. at 294.

This reasoning led the Bankruptcy Court to further conclude that since workers' compensation premiums are required to meet an obligation imposed by the state, they were primarily for Southern Star's benefit, not its employees. This conclusion is in line with the Eighth Circuit's rationale when it stated

"premiums for workers' compensation insurance are not 'contributions to an em-

ployee benefit plan,' which an employee may bargain for in lieu of higher wages, instead, ... workers' compensation insurance is a system mandated by statute. Employers cannot offer (and employees cannot accept) higher wages as a substitute for workers' compensation benefits."

*HLM,* 62 F.3d at 226 (citing *HLM,* 165 B.R. at 40).

The purpose of the Oklahoma workers' compensation benefit scheme simply cannot be interpreted as a "fringe benefit" supplementing wages. In fact, the scheme was a compromise between workers and employers in which the workers gave up the right to sue for damages for work-related injuries, and the employers gave up certain defenses, such as the "fellow servant rule." *Carroll,* 579 P.2d at 830. The Oklahoma Supreme Court observed, "[e]very common-law right of the workman has been abrogated, and another right substituted, not governed by common-law rules.... The injured workman can no longer use common-law rules ... to extract compensation for injuries sustained by him." *Brooks v. A.A. Davis & Co.,* 124 Okla. 140, 254 P. 66, 70 (1926).

After considering the nature of workers' compensation insurance and the meaning of the terms used in § 507(a)(4), this Court holds that the priority was intended to be narrowly construed and applied to "fringe benefits" in lieu of wages. Accordingly, § 507(a)(4) was not intended to apply to unpaid workers' compensation premiums such as those the Fund claims in this case.

The order of the Bankruptcy Court is hereby AFFIRMED.