In re ALLENTOWN MOVING & STORAGE, INC., Debtor.

MANUFACTURERS ALLIANCE INSURANCE COMPANY, Appellant,

v.

Gloria SATRIALE, as Chapter 7 Bankruptcy Trustee of Allentown Moving & Storage, Inc., Appellee.

Bankruptcy No. 93–23467T.
No. 97–4397.

United States District Court, E.D. Pennsylvania.

Oct. 28, 1997.

Michael D. Bull, Blakinger, Byler & Thomas, P.C., Lancaster, PA, for Debtor.

Margery N. Reed, Lauren Lonergan Taylor, Duane, Morris & Heckscher, L.L.P., Phila, PA, John J. Sellinger, King of Prussia, PA, for Manufacturers Alliance Insurance Company.

PADOVA, District Judge.

## MEMORANDUM

Manufacturers Alliance Insurance Company ("MAIC") appeals from the bankruptcy court's decision that its claim for unpaid workers' compensation insurance premiums was not entitled to priority payment from the estate of Allentown Moving & Storage Inc. ("Allentown") as a "contribution to an employee benefit plan" under 11 U.S.C. § 507(a)(4). For the reasons set forth below, I will affirm the judgment of the Bankruptcy Court.

## I. FACTUAL AND PROCEDURAL HISTORY

There are no material facts in dispute.

Manufacturers Alliance Insurance Company provided workers compensation and employer's liability benefits to the employees of Allentown Moving & Storage, Inc. under two policies. The premiums were paid by Allentown. At the time Allentown filed for bankruptcy on December 20, 1993, it had not fully paid MAIC for pre-petition coverage. On March 23, 1994, MAIC filed a fourth priority claim for $12,948.00, which represents that portion of the outstanding premiums under both policies incurred within 180 days of the bankruptcy filing. See 11 U.S.C. § 507(a)(4). The Trustee, Gloria Satriale, ("Trustee") filed an Objection to this priority claim (Proof of Claim No. 9) on the basis that MAIC's claim was not entitled to priority status under Section 507(a)(4). On May 28, 1997, the Bankruptcy Court entered an Order granting the Trustee's Objection, holding that MAIC's claim was not entitled to priority treatment under 11 U.S.C. § 507(a)(4), because insurance premiums for workers compensation benefits are not "contributions to an employee benefit plan."

Neither the Trustee nor the Bankruptcy Court disputes that MAIC's claim arose from services rendered within 180 days before the date Allentown filed for bankruptcy. In addition, neither the Trustee nor the Bankruptcy Court disputes the calculation of the claim or its amount. Therefore, the only issue on appeal is whether the Bankruptcy Court erred as a matter of law in finding that a claim for unpaid workers' compensation insurance premiums is not entitled to priority treatment under Section 507(a)(4).[1]

## II. LEGAL STANDARD

"[I]n bankruptcy cases, the district court sits as an appellate court." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir.1995). "As a proceeding tried initially before the Bankruptcy Court for the Eastern District of Pennsylvania, the standard of review for the district court is governed by Rule 8013." *Id.* Federal Bankruptcy Rule of Procedure 8013 provides:

**Dispositions of Appeal; Weight Accorded Bankruptcy Judge's Findings of Fact**

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment,

---

1. The relevant code provision, 11 U.S.C. § 507(a)(4), reads as follows:
   (a) The following expenses and claims have priority in the following order:
   (4) Fourth, allowed unsecured claims for contributions to an employee benefit plan—
   (A) arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) for each such plan, to the extent of—
(I) the number of employees covered by each such plan multiplied by $2,000; less (ii) the aggregate amount paid to such employees under paragraph (iii) of this subsection, plus the aggregate amount paid by the estate on behalf of such employees to any other employee benefit plan.

order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Fed. Bankr.R. P. 8013.

■ The district court applies "a clearly erroneous standard to findings of fact ... [and] a *de novo* standard of review to questions of law." *Berkery v. Comm'r, Internal Revenue Serv.*, 192 B.R. 835, 837 (E.D.Pa. 1996) (citing *inter alia Universal Minerals, Inc. v. C.A. Hughes & Co.*, 669 F.2d 98, 102 (3d Cir.1981)), *aff'd*, 111 F.3d 125 (1997). *De novo* review requires the district court to make its own legal conclusions, "without deferential regard to those made by the bankruptcy court." *Fleet Consumer Discount Co. v. Graves (In re Graves)*, 156 B.R. 949, 954 (E.D.Pa.1993), *aff'd*, 33 F.3d 242 (3d Cir. 1994). When the parties to an appeal have submitted their case on a stipulated record of facts, a district court makes its own independent determination regarding the disposition of the legal issues presented by the case. *Citicorp Mortgage, Inc. v. Hirsch (In re Hirsch)*, 166 B.R. 248, 251 (E.D.Pa.1994).[2]

## III. DISCUSSION

### A. Priority Treatment under 11 U.S.C. § 507(a)(4)

■ Title 11 U.S.C. § 507 establishes the statutory framework for the priority in which payments will be made to creditors in bankruptcy proceedings. The part of Section 507(a)(4) that is relevant to this appeal provides a fourth priority for "unsecured claims for contributions to an employee benefit plan arising from services rendered within 180 days before the date of the filing of the petition or the date of the cessation of the

debtor's business, whichever occurs first." 11 U.S.C § 507(a)(4). The present controversy arises because the phrase "contributions to an employee benefit plan" is not defined by the Bankruptcy Code.

Before Section 507(a)(4) was added to the Bankruptcy Code, priority treatment for employee compensation was limited to actual "wages and commissions."[3] In 1978, Congress added § 507(a)(4) in recognition of the changing nature of employee compensation packages. By supplementing the priority for actual wages and commissions with a priority for "fringe benefits," Congress intended to overrule two United States Supreme Court cases, *United States v. Embassy Restaurant*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959), and *Joint Industry Board v. United States*, 391 U.S. 224, 88 S.Ct. 1491, 20 L.Ed.2d 546 (1968), which, in construing the 1898 Act, excluded fringe benefits from the Code's wage priority provisions. The legislative history provides:

> Paragraph(4) overrules *United States v. Embassy Restaurant*, 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959), which held that fringe benefits were not entitled to wage priority status. The bill recognizes the realities of labor contract negotiations, under which wage demands are often reduced if adequate fringe benefits are substituted. The priority granted is limited to claims for contributions to employee benefit plans such as pension plans, health or life insurance plans, and others, arising from services rendered after the earlier of one year before the bankruptcy case and the total of all contributions payable under this paragraph ...

H.R.No. 95–595, 95th Cong.2d Sess. 187 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6313.

Appellant urges the Court to interpret Section 507(a)(4)'s priority broadly to include workers' compensation insurance. Ap-

---

2. The parties to the instant appeal filed a Stipulation of Facts ("Stipulation") in Bankruptcy Court and submitted the Stipulation to this Court in the Appellant's Designation of Items to be Included in the Record on Appeal. Therefore, the issue presented by this appeal is strictly a question of law and the Court will review the Bankruptcy Court's decision *de novo*.

3. Under the Bankruptcy Act of 1898, 11 U.S.C. § 104(a)(2) (repealed 1978), only actual "wages and commissions" were entitled to priority in bankruptcy. Priority for "wages, salaries, or commissions" is now provided under Section 507(a)(3).

pellant argues that the legislative history encourages a broad interpretation of the Section by referencing "pension plans, health or life insurance plans, *and others...*" *Id.* (emphasis added). By providing, "and others," Appellant continues, Congress intended that "contributions to an employee benefit plan" include all types of insurance payments, including workers' compensation premiums.[4] By contrast, the Trustee asks the Court to recognize the strong presumption against the granting of priority status and to limit priority status to the wage-like forms of compensation that Congress intended to address by adding Section 507(a)(4). The Trustee argues further that workers' compensation insurance premiums for pre-petition coverage do not provide the type of direct benefit to employees that Congress intended to protect under Section 507(a)(4). For the following reasons, I agree with the Trustee.

The Third Circuit has yet to specifically address whether a claim for unpaid pre-petition workers' compensation insurance premiums is entitled to fourth priority status under § 507(a)(4).[5] For that reason, the Court relies on established principles of statutory interpretation to resolve the instant issue.

### B. Statutory Interpretation of Section 507(a)(4)

Statutory interpretation begins with the language of the statute itself and the words are given their ordinary meaning. *Moskal v. United States*, 498 U.S. 103, 108, 111 S.Ct. 461, 465, 112 L.Ed.2d 449 (1990). Where the statutory meaning is unclear, the Court looks to the legislative history to resolve any conflict. *See Cohen v. De La Cruz (In re Cohen)*, 106 F.3d 52, 57–58 (3d Cir.1997) (citing *Patterson v. Shumate*, 504 U.S. 753, 761, 112 S.Ct. 2242, 2248, 119 L.Ed.2d 519 (1992)); *United States v. Wernikove*, 206 F.Supp. 407, 408 (E.D.Pa.1962) ("[The court's] ultimate goal is, of course, to ascertain Congressional intent ...") (citation omitted). "Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed." *See In re Great Northeastern Lumber & Millwork Corporation*, 64 B.R. 426, 427 (Bankr.E.D.Pa. 1986) (citations omitted).

In common parlance, "employee benefit plan" means the total of all benefits that the employee receives from the employer as remuneration. In other words, the employer's "contributions" to such a plan are those benefits that he promises to the employee in lieu of wages. The question for the Court is whether workers' compensation insurance is such a "contribution to an employee benefit plan." An examination of § 507(a)(4)'s legislative history clearly reveals that it is not. Explaining the contours of the priority for

---

**4.** Appellant alternatively asks the Court to adopt ERISA's definition of "employee benefit plan." The Court finds unpersuasive Appellant's argument that because Congress was aware of ERISA's definition of "employee benefit plan" at the time it enacted § 507(a)(4), it therefore meant to implicitly incorporate that definition into the Bankruptcy Code. Furthermore, although ERISA may include its own definition of "employee benefit plan", the Court finds no compelling reason to infer that such a definition was intended to effectuate the purpose of the Bankruptcy Code. *See Employers Insurance of Wausau v. Ramette (In re HLM Corporation)*, 62 F.3d 224, 226 (8th Cir.1995).

**5.** However, the Court recognizes that the First, Eighth and Ninth Circuits and various district and bankruptcy courts have addressed this issue and that the authority is split. *See In re Saco Local Development Corp.*, 711 F.2d 441 (1st Cir. 1983) (holding that life, health and disability insurance premiums are entitled to § 507(a)(4)

priority); *Employers Insurance of Wausau v. Ramette (In re HLM Corporation)*, 62 F.3d 224 (8th Cir.1995) (holding that because payment of workers' compensation insurance is not a wage substitute, it is not covered by § 507(a)(4)'s priority); *Employers Insurance of Wausau v. Plaid Pantries, Inc.*, 10 F.3d 605 (9th Cir.1993) (holding that statutorily mandated workers compensation insurance is the type of benefit protected by § 507(a)(4)). The Bankruptcy Court exhaustively surveyed the decisions that have addressed the instant issue. Because I find that the plain language of the statute coupled with the legislative history clearly reveals that Congress intended to limit the Section 507(a)(4) priority to wage-like benefits, such that a claim for unpaid pre-petition workers' compensation insurance premiums is not entitled to fourth priority, I need not reach all of the issues raised in the cases discussed by the Bankruptcy Court. Henceforth, I merely expand on the Bankruptcy Court's analysis of the legislative history.

"contributions to an employee benefit plan" under Section 507(a)(4), Congress stated:

> In recognition of changes since 1926, the bill ... establishes a new category, a fourth priority immediately following the wage priority, for contributions and payments to employee benefit plans. This will include health insurance programs, life insurance plans, pension funds and *all other forms of employee compensation that is not in the form of wages.*

H.R.No. 95–595, 95th Cong.2d Sess. 187 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6148 (emphasis added).

■ Congress' characterization of the priority as "all other forms of employee compensation that is not in the form of wages" limits the priority under § 507(a)(4) to only those benefits provided by employer to employee as wage substitutes. By choosing this language, Congress could not have intended to grant priority to every possible benefit to an employee, however attenuated. The Court can conceive of far too many potential benefits that would follow from this interpretation. To the contrary, Congress intended to adapt to the changing nature of employee compensation packages by providing priority to alternative forms of compensation. Such forms of compensation can include only those wage-like benefits that employers provided to employees in lieu of wages. *In re Southern Star Foods, Inc.,* 201 B.R. 291, 294 (Bankr.E.D.Okla.1996) (holding that " § 507(a)(4) was intended to be narrowly construed and applied to 'fringe benefits' in lieu of wages, and was not intended to apply to unpaid workers' compensation premiums ...").

The Eighth Circuit, in its opinion denying priority status to a claim for workers' compensation insurance premiums, recognized that Congress' intent in enacting § 507(a)(4) was to grant priority for benefits provided to employees in lieu of wages. Quoting the district court, the Eighth Circuit observed:

> Both § 507(a)(4)'s plain language and its legislative history, as reflected in the House and Senate Reports, demonstrate that contributions to an "employee benefit plan" are not the same as employer's workers' compensation premium payments.

This construction of the phrase "employee benefit plan" is also consistent with the purposes of the Code. *Section 507(a)(4) was adopted specifically to place non-monetary compensation owed by a debtor to its employees on the same level as wage compensation. As discussed, workers' compensation insurance payments are not a wage substitute.* More generally, the Code was promulgated to ensure the fair and uniform treatment of creditors. To that end, preferential treatment is given to unsecured creditors only in exceptional circumstances. [The insurer] has provided no compelling reason to show why funds should be taken from [the employer's] other unsecured creditors and given to it.

*In re HLM,* 62 F.3d at 226–27 (citing *Employers Ins. of Wausau v. Ramette,* 183 B.R. 852, 856 (D.Minn.1994) (emphasis added)).

■ The Court finds the Eighth Circuit's reasoning persuasive. The present claim must be viewed against the background of the basic policy of equal treatment of creditors. *See In re University Medical Center,* 973 F.2d 1065, 1084 (3d Cir.1992) (upholding automatic stay provision of the bankruptcy law because it "prevents disparate actions against debtors and protects creditors in a manner consistent with the bankruptcy goal of equal treatment"). Statutory priorities therefore, must be narrowly construed. *See In re Great Northeastern Lumber & Millwork Corp.,* 64 B.R. at 426–28. It would be an excessively broad interpretation of the statute to fit a claim for workers'' compensation insurance premiums within a priority established for wage substitutes. *See In re HLM,* 62 F.3d at 227 (finding that by including statutorily-mandated workers' compensation insurance in the § 507(a)(4) priority, the Ninth Circuit in *Employers Insurance of Wausau v. Plaid Pantries,* 10 F.3d 605, 607 (9th Cir.1993), "excessively broadened the reach of the Code language in question"). In this case, MAIC stands as any other general unsecured creditor and should be treated as such. As the Bankruptcy Court in the District of New Jersey stated in denying priority to a similar claim:

> As the Supreme Court has stated, the plain meaning of the code should be con-

clusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." A reading of section 507 reveals that Congress has made no such provision for preferential payment of pre-petition workers' compensation premiums. Accordingly, it was not Congress' intent to grant unpaid pre-petition workers' compensation premiums administrative priority. Rather, such claims should be treated as general unsecured claims payable in the ordinary course with the other unsecured creditors of the estate.

In making its decision, the court recognizes the numerous policy arguments put forth by the insurance companies in their effort to show that the unique nature of workers' compensation premiums entitles them to preferential treatment. Most notably, the insurance companies argue that preferential payment of their premiums is necessary to ensure the financial viability of the workers' compensation insurance industry. This argument, however, could easily be made by any creditor. In today's complex business marketplace, every business might necessarily have to rely on the prompt payment of bills to ensure its own financial stability. Yet, the very fact that the bankruptcy code exists is testament to the fact that businesses will sometimes not be in the position to satisfy their debts. Accordingly, the price to be paid in the marketplace for the type of service offered should be a reflection of the realities of doing business in a sometimes unpredictable business environment—where bankruptcy is a definite possibility.

*In re Arrow Carrier Corporation,* 154 B.R. 642, 646 (Bankr.D.N.J.1993) (internal quotations omitted).

The Court also rejects Appellant's argument that the payment of pre-petition premiums is the type of direct benefit to employees that Congress intended to protect in the event of employer bankruptcy. "A true 'benefit' would be one more commonly associated with, for example, employee life insurance benefits, where unless an employer offered a life insurance benefit plan the employee would not necessarily have coverage." *See In re HLM,* 62 F.3d at 226. In the case of workers' compensation, employees in Pennsylvania will be provided with coverage whether or not their employer purchases insurance. Workers' compensation insurance acts simply as an indemnification arrangement to insure that employers abide by the state mandated plan. *See In re HLM,* 62 F.3d at 226 ("[t]he institution of a workers' compensation insurance program helps employers safeguard their statutory obligations . . .") (internal quotations omitted).[6] It does not act to transform an employer's legal obligation into a benefit offered to an employee as a wage substitute.

> That is, § 507(a)(4) was intended to grant priority status to such "claims for contributions to an employee benefit plan" as are in the nature of bargained-for wage substitutes or "fringe benefits," which are not within the letter of the previous § 507(a)(3) but are within its spirit.

> This description does not fit claims for unpaid workers' compensation premiums. Workers' compensation is not bargained for by employees; it is required by the State. It cannot be bargained away; it is not a substitute for employee wages, but an obligation which employers must meet, no matter what wage levels they may pay. In this sense, the premium payments were primarily for [the employer's] own benefit.

*In re Southern Star,* 201 B.R. at 294.

Moreover, any potential derivative benefit to the employees from their employers' workers compensation insurance arrangement had already accrued at the time that

---

**6.** The Court notes Appellant's argument that Minnesota's workers' compensation statute is distinguishable from the comparable statute in Pennsylvania because the Minnesota statute provides for a state special compensation fund in the event that the employer itself failed to provide workers' compensation insurance. However, the Court fails to see the significance of this distinction in light of its finding that a claim for pre-petition workers' compensation insurance is not a wage-like form of compensation as contemplated by the § 507(a)(4) priority. Whether or not a state compensation fund exists, workers' compensation insurance is mandated by statute and is not a wage substitute.

MAIC filed its § 507(a)(4) priority claim.[7] Accordingly, to grant priority status to MAIC's claim at this time would only serve to benefit MAIC. This is clearly not the type of benefit that Congress intended to protect by enacting § 507(a)(4).

A plain reading of Section 507(a)(4) suggests and an examination of its legislative history confirms that Congress did not intend to grant priority to a claim for unpaid pre-petition workers' compensation insurance premiums. MAIC must wait in line with the other general unsecured creditors of Allentown's estate. The judgment of the Bankruptcy Court is affirmed.

An appropriate Order follows.

### ORDER

**AND NOW,** this day of October, 1997, upon consideration of Brief of Appellant Manufacturers Alliance Insurance Company (Doc. No. 3), Response of Appellee Gloria Satriale as Trustee for Allentown Moving & Storage, Inc. (Doc. No. 5), Appellant's Reply thereto (Doc. No. 6), and an Oral Argument held on Tuesday, September 30, 1997, **IT IS HEREBY ORDERED THAT** the Bankruptcy Court's decision is **AFFIRMED.**

---

**7.** Both parties agree that MAIC's claim arose from services rendered within 180 days before Allentown filed for bankruptcy.